John M. AVINGER et al., Appellants,

v.

W. E. CAMPBELL, Jr., Appellee.

No. 18118.

Court of Civil Appeals of Texas,
Dallas.

July 12, 1973.

Rehearing Denied Sept. 24, 1973.

Charles P. Storey, Storey, Armstrong & Steger, Dallas, for appellants.

Thomas C. Unis, Patrick F. McGowan, Strasburger, Price, Kelton, Martin & Unis, Dallas, for appellee.

GUITTARD, Justice.

Four limited partners brought this suit against the general partner for their share of the profit realized by sale of land owned by the limited partnership. They question the authority of the general partner to pay $360,676 to the Catholic Foundation in lieu of a previous arrangement for a conveyance of part of the land to the foundation for erection of a church. The trial court sustained defendant's motion for summary judgment, which alleged that he was authorized to make the payment as general partner because he had made a binding contract to convey the land to the foundation. We hold that the summary judgment was erroneous because the evidence fails to establish as a matter of law that a binding contract had been made.

Our statement of the evidence is taken from the affidavit of the general partner, defendant W. E. Campbell. In 1967 Campbell as an individual entered into a contract for purchase of one hundred and ten acres of land in Tarrant County. He approached Monsignor Henry McGill, executive director of the Catholic Foundation, showed him the land, and "gave them an option to take over my contract until December 10, 1967." According to Campbell, this was a "verbal but nonetheless binding option." Apparently the foundation declined to purchase the entire tract. However, defendant continued the discussions with Monsignor McGill, and after several weeks "the concept developed" that a Ro-

man Catholic Church would be built at some location on the property and the remainder would be professionally planned for a restricted development to include residences, apartments and commercial facilities. Campbell presented to the foundation the idea that this plan would be carried out by the formation of a limited partnership with Campbell as general partner, and that Monsignor McGill would assist in selecting the limited partners and would invite them to participate. Because of the efforts of Monsignor McGill a number of persons joined in the partnership.

The partners recommended by Monsignor McGill did not include plaintiffs, who were recommended by Campbell. In December 1967 Campbell suggested that plaintiffs Don Houseman, Alden Wagner and Walter Spradley be permitted to participate, and Monsignor McGill agreed. In response to a letter from Campbell, Houseman wrote Campbell that he would take a twenty per cent interest in the syndicate and added, "I understand that the syndicate will agree to donate 18 acres to the Catholic Foundation in exchange for an agreement from them to construct a parish church." In a later letter Houseman requested that this twenty per cent interest be divided between Wagner, Spradley and himself. The last partner, plaintiff John Avinger, was also admitted at Campbell's suggestion, and he was given a seven and one-half per cent interest, so that the combined interest of the four plaintiffs amounted to twenty-seven and one-half per cent. According to Campbell, each of the limited partners was given a precise explanation of the transaction before their commitment.

The parties signed articles of limited partnership dated January 11, 1968, naming Campbell general partner and containing the following provision:

"The general partner may, in his discretion hold title to the Real Estate or any other property of partnership in his own name or in the name of any other nomi-

nee without disclosure of the beneficial interest of the partnership and may sell, lease, mortgage, improve, and otherwise deal with real estate and other partnership property in such manner as he may deem appropriate in his absolute discretion, it being intended to vest in the general partner the most complete authority with respect to the management of the partnership affairs permitted under the terms of the Texas Uniform Limited Partnership Act. Without limiting the generality of the foregoing, it is expressly stipulated that the general partner shall have the power and authority in his discretion to grant and convey to the Catholic Foundation approximately eighteen (18) acres out of the Real Estate [such eighteen (18) acre tract to be located as approved by the general partner], such conveyance to be free and clear of any liens and encumbrances, but subject to the express stipulation and condition that at least ten (10) acres out of such eighteen (18) acre tract shall be used for the site for a Roman Catholic Church satisfactory to the general partner, with the balance to constitute a contribution to the Catholic Foundation." (Bracketed language in original.)

The articles also provided for assignment by Campbell to the partnership of his contract for purchase of the land, and the deal for the land was closed on February 23, 1968. Campbell's affidavit further recites:

"Prior to inviting any partners into the syndicate, and while holding a bonafied [sic] contract in my name as purchaser, I made a deal with Monsignor McGill that the foundation could have either one of the following: I would convey all my right and title in the contract at my exact cost to the Catholic Foundation until December 10, 1967; or, in exchange for their agreement to build at some future date—the date to be at their sole discretion—a Catholic Church on 10 acres out of an 18-acre tract, I would agree to give them 18 acres out of

the 110 total acres. After the partnership was formed, in order to develop the partnership's land, as general partner acting on behalf of the partnership, I bound the partnership to take over my position with respect to the commitment of the 18 acres to the Catholic Foundation in return for their obtaining the agreement of the Diocese of Dallas to build a church on 10 acres of the land. The Catholic Foundation obtained the necessary commitment to establish a church site, and we started planning the land's development."

In 1969 Campbell received an offer from Sears, Roebuck & Company to purchase the land for $10,000 per acre. Since Sears was not willing to buy less than the entire tract, sale to Sears would have ruled out conveyance of any land to the foundation. Campbell's affidavit states: "I resolved the problem with Monsignor McGill and the Catholic Foundation by agreeing to pay the Foundation the full amount of their 18 acres at whatever price we sold for in exchange for their agreeing to let me include their 18 acres in the overall package sale to Sears, Roebuck & Company." After he discussed the problem with Monsignor McGill, says Campbell, "[H]e, in turn, discussed it with his people and we both got together on the agreement." After extensive negotiations by Campbell and Monsignor McGill, the land was sold to Sears for $20,000 per acre, and the transaction was closed in September 1970. The net sum received from Sears, after deducting legal and auditors' fees, amounted to $1,859,601. Of this amount Campbell paid $360,676 to the foundation, held $12,000 in a fund to cover possible liability on a note assumed by Sears, and distributed the balance of $1,486,925 to the partners.

Plaintiffs sued for their proportionate shares of the difference between the net sum $1,859,601 and the $1,486,925 actually distributed, contending that their shares of the profit should have been determined without deducting the amount Campbell paid to the foundation or the $12,000 held to cover the contingent liability. Both sides moved for summary judgment. Defendant's motion was based on the sole ground that defendant, by virtue of his authority as general partner, had made a binding contract with the foundation to convey to it eighteen acres of land in return for the foundation's commitment to build a church on ten acres of that land, and that when greater profit could be achieved by the sale to Sears, all of the partners agreed to that sale, and that conveyance of the land to Sears caused damage to the foundation measured by the value of land that should have been conveyed to it. Attached to defendant's motion was his own affidavit and the affidavits of the seven limited partners who did not join in the suit. In response, the four plaintiffs filed affidavits reciting that after closing of the sale to Sears and before any kind of payment to the foundation, they each wrote a letter to Campbell objecting to any payment to the foundation so far as their shares were concerned. The trial court overruled plaintiffs' motion and sustained defendant's motion.

On this appeal plaintiffs contend that the summary judgment was erroneous because defendant's payment to the foundation was a charitable gift and was a use of partnership funds for a purpose prohibited by the articles of partnership and by the Texas Uniform Limited Partnership Act, Tex. Rev.Civ.Stat.Ann. art. 6132a § 10 (Vernon 1970), as follows:

"Sec. 10. (a) A general partner shall have all the rights and powers and be subject to all the restrictions and liabilities of a partner in a partnership without limited partners, except that without the written consent or ratification of the specific act by all the limited partners, a general partner or all of the general partners have no authority to:

(1) Do any act in contravention of the certificate. . . .

(4) Possess partnership property, or assign their rights in specific partnership property, for other than a partnership purpose. . . ."

■ We hold that the summary judgment was erroneous because defendant has failed to establish as a matter of law a binding obligation supporting the payment to the foundation. As a party defendant, Campbell was an interested witness. The statements in his affidavit concerning his "deal" with the foundation and the foundation's "commitment" to build a church are his interpretations of conversations not otherwise detailed and his opinions concerning the legal effect of transactions not factually described. His statement that Monsignor McGill obtained a "commitment" from the Catholic authorities to build a church does not appear to be made on his personal knowledge, and the nature of this "commitment" is not further explained. No corroborating affidavit by Monsignor McGill is presented. Without more factual details of these transactions, we are unable to determine whether Campbell had a "bilateral contract" with the foundation, as he interpreted the arrangement, or whether he only promised to make a donation of partnership land to the foundation on condition of building a church.[1] Consequently, the statements in his affidavit are not of that clear, direct and positive character required of an interested witness for the purpose of establishing the absence of any genuine issue of material fact. Crain v. Davis, 417 S.W.2d 53 (Tex.1967); Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41 (Tex.1965); Southwest Bank & Trust Co. v. Executive Sportsman Ass'n, 477 S. W.2d 920 (Tex.Civ.App.—Dallas, 1972, writ ref'd n. r. e.).

■ Other grounds for sustaining the summary judgment for defendant are discussed in the briefs, but since they were not specified in defendant's motion for summary judgment as now required by Texas Rules of Civil Procedure 166–A(c), plaintiffs were not required to reply to them and we cannot consider them in support of the judgment. Cf. Arnold v. Tarrant Beverage Co., 215 S.W.2d 894 (Tex. Civ.App.—Galveston, 1948, no writ) (motion for instructed verdict under rule 268).

Since the judgment for defendant must be reversed, we now turn to plaintiffs' contention that we should sustain their motion for summary judgment, which the trial court overruled. After review of the record, we conclude that the case should be remanded for further proceedings. Plaintiffs' motion for summary judgment is based simply on the proposition that they have established defendant's receipt of partnership funds and have shown that defendant has not paid them their share. They state in their affidavits that after the transaction with Sears was closed and before distribution of any of the funds from that sale, they each wrote to defendant advising that they did not desire to participate in any donation to the foundation. On the other hand, defendant states in his affidavit that after he agreed with Monsignor McGill to pay the foundation for the eighteen acres at the price fixed in the sale to Sears, he talked to plaintiffs Wagner and Avinger and they "urged me to make the deal." He does not say that the "deal" as discussed with Avinger included any payment to the foundation, but with respect to Wagner he does state, "Mr. Wagner at this point asked again about the position of the Foundation's 18 acres and I told him again exactly what the deal was and he said this was completely agreeable with him and to go ahead and make the deal. I felt that Mr. Wagner, at all times, was the spokesman for Mr. Houseman and Mr. Spradley." Defendant alleged in his

---

1. No argument has been made to us to the effect that the foundation's commitment to build a church "at some future date—the date to be at their sole discretion" was an illusory promise which would not be consideration for Campbell's promise to convey eighteen acres of land. On this point see 1 A. Corbin, Contracts § 145 (1963).

answer that plaintiffs by their conduct "relinquished and waived any requirement that only land be conveyed to the Catholic Foundation rather than the market value thereof," and further alleged plaintiffs are "estopped to assert any limitations contained in the Articles of Limited Partnership, since by their conduct Defendant was led to believe that a monetary settlement or bilateral agreement with the Catholic Foundation would be proper, and that Defendant relied upon such to his prejudice."

 Plaintiffs argue that Campbell's affidavit is insufficient to raise a fact issue under these pleadings because it states conclusions and hearsay. It may raise a fact issue with respect to plaintiff Wagner, since it states that he explained the "deal" with the foundation to Wagner, who urged him to go ahead.[2] We need not decide whether the affidavit is sufficient to raise a fact issue with respect to the other plaintiffs, since we have already held that the trial court's judgment must be reversed on other grounds. It is only necessary to say that the facts have not been fully developed by the summary-judgment proof. Plaintiffs' affidavits neither affirm nor deny any conversations between plaintiffs and defendant before the sale to Sears concerning the proposed payment to the foundation, and defendant's affidavit states that such conversations did take place, but gives few details. Since the trial court sustained defendant's motion, based on the erroneous theory that defendant had established a binding contract with the foundation, neither party appears to have presented the available evidence on the pleaded defenses of waiver and estoppel. When a judgment is reversed and the record indicates that the facts have not been fully developed, as in a case where the party who prevailed in the trial court proceeded on the wrong theory, the appellate court is not required to render judgment against the

losing party, even though a judgment against him in the trial court would have been proper, but is authorized by Tex.R. Civ.P. 434 to remand for further proceedings in the interest of justice. Morrow v. Shotwell, 477 S.W.2d 538 (Tex.1972); Aetna Insurance Co. v. Klein, 160 Tex. 61, 325 S.W.2d 376 (1959); Dahlberg v. Holden, 150 Tex. 179, 238 S.W.2d 699 (1951). This practice is followed even on venue appeals. Jackson v. Hall, 147 Tex. 245, 214 S.W.2d 458 (1948). We see no reason why it should not apply also to a summary judgment proceeding where the summary-judgment proof indicates that the facts have not been fully developed.

 Plaintiffs also complain of failure of the trial court to sustain their motions to strike the affidavits filed by the defendant on the ground that they are based on hearsay, do not affirmatively show that appellants are competent to testify to the matters stated therein, and do not set forth such facts as would be admissible in evidence, as required by Tex.R.Civ.P. 166–A(e). This point is well taken with respect to the affidavits of the non-party partners. Their affidavits appear to be based on hearsay insofar as they concern conversations between Campbell and representatives of the foundation. Although they might be competent to show that these partners had notice of the arrangement with the foundation, notice to them would be immaterial, since it would not be notice to the other partners. Campbell's own affidavit, however, is subject to different considerations. Some of it appears to be based on facts within his personal knowledge. In this situation, the trial court had discretion to overrule the motion to strike and to consider those parts of the affidavit which were admissible. Objections to the form of the affidavit and to particular statements in it would be properly raised

2. Article 6132a § 10 forbids certain acts without "written consent" of all limited partners. We do not determine whether this requirement is applicable, or whether a limited partner may be estopped to insist on it, since no argument on these points has been presented.

by exceptions. Youngstown Sheet & Tube Co. v. Penn, 363 S.W.2d 230 (Tex.1962).

■ Since we have decided that the case must be remanded, we may properly comment on several matters which are discussed in the briefs and may arise in further proceedings. We cannot agree with plaintiffs that the Statute of Frauds applies to the alleged contract between the partnership and the foundation, because an oral contract to sell real estate is not void, but only voidable in a suit to enforce specific performance. Mason v. Abel, 215 S. W.2d 377 (Tex.Civ.App.—Dallas, 1948, writ ref'd n. r. e.). Cf. Clements v. Withers, 437 S.W.2d 818 (Tex.1969). If the elements of a binding contract are otherwise established, limited partners cannot complain of the action of a general partner in treating an oral contract as binding. Neither can we accept plaintiffs' argument that the parol evidence rule forbids any agreement concerning distribution of profits contrary to the provisions of the articles of partnership, and, consequently, that plaintiffs' share of the profit from the sale to Sears cannot be reduced by the payment to the foundation. This argument assumes that no binding obligation to the foundation existed. If the partnership was bound to convey part of the land to the foundation, then the profit subject to distribution was the balance remaining after discharge of that obligation.

■ On the other hand, we find no merit in defendant's argument that the provision of the articles above quoted establishes an enforceable third-party beneficiary contract. This provision authorizes Campbell to convey eighteen acres of land to the foundation, but does not require him to do so. Consequently, the foundation would have no right to compel such a conveyance in absence of a binding agreement between the partnership and the foundation. Neither do we find in the summary-judgment proof any evidence of a confidential relationship between the partnership and the foundation which would vest in the foundation an equitable interest in the land on the theory of a constructive trust or joint venture. Campbell says in his affidavit that he gave the foundation an "option" until December 10, 1967, on the whole tract of land, but he states no consideration to support such an option, and he does not show that it was exercised. Nothing in Campbell's affidavit indicates that the foundation ever claimed any interest in the land other than possibly by the terms of the "deal" by which the partnership would convey eighteen acres in consideration of a commitment to build a church. If this "deal" was not a binding contract, neither did it create a confidential relationship or joint venture.

Defendant's primary contention is that since he was expressly authorized by the articles of partnership to convey eighteen acres of land to the foundation in consideration of the foundation's commitment to build a church, he had power, as general partner, to refuse the Sears offer and proceed to convey the eighteen acres to the foundation pursuant to the previous arrangement, and that plaintiffs are in no position to complain of his decision to honor his promise to the foundation by selling the land to Sears and paying the foundation cash, since that decision was to the financial advantage of the partnership and of plaintiffs as limited partners. This contention might be well taken if the partnership's promise to the foundation created a legal obligation which the partnership had to discharge before making the sale to Sears, or if the foundation were asserting such an obligation and Campbell determined in good faith that the payment would serve a partnership purpose. On the other hand, if the arrangement with the foundation was merely a proposal to make a gift which Campbell was free to withdraw, then he has no basis to say that payment of cash to the foundation in lieu of conveyance of the land was made for a partnership purpose after abandonment of the projected residential development which the partners thought would be en-

hanced by the church. Defendant does not argue that the payment is supported by a moral obligation to the foundation and presents no authorities holding that such an obligation would be sufficient to justify the payment as being for a partnership purpose.

Finally, we note plaintiffs' contention that the pleading and proof fail to support the trial court's order that the $12,000 fund be held until January 1, 1974, and then distributed to the partners proportionately. In view of the remand, we need say only that the evidence concerning this fund was not fully developed. If the general partner had a partnership purpose for retaining it beyond January 1, 1974, plaintiffs would be in no position to complain of the order requiring distribution on that date.

Reversed and remanded.