Roland O. DAVIS, Appellant,

v.

Norman N. CAMPBELL and Harold Collum, Appellees.

No. 18595.

Court of Civil Appeals of Texas, Dallas.

June 19, 1975.

James P. Finstrom, Dallas, for appellant.

Myles H. Pennington, Grand Prairie, for appellees.

GUITTARD, Justice.

Roland Davis sued Norman Campbell and Harold Collum for damages for breach of an oral agreement concerning a tract of land. Defendants moved for summary judgment on the ground, among others, that the suit was barred by the Statute of Frauds, Tex.Bus. & Comm.Code Ann. § 26.-01(b)(4), V.T.C.A. (Vernon 1968). The trial court sustained the motion, and plaintiff appeals. We reverse on the ground that a fact issue exists as to whether the Statute of Frauds is rendered inapplicable by plaintiff's performance of his obligations under the oral agreement. We interpret the summary-judgment evidence as tending to show that plaintiff had an interest in the property in the nature of an oral option, which he agreed to transfer to defendants in consideration of defendants' promise to give him part of the profit on a possible resale, and that defendants had the benefit of plaintiff's performance of this contract but failed to keep their promise.

Plaintiff's affidavit and deposition were before the court on the motion for summary judgment. When viewed in the light most

favorable to plaintiff, they support the following version of the facts.

The property was a motel, which had been owned and operated by plaintiff Davis. Plaintiff had fallen behind in his payments to both first and second lienholders, and in October 1970 the second lien was foreclosed. The property was bought at the sale by a representative of the C. D. Wyche estate, the holder of the second lien. Davis remained in possession as tenant. After the foreclosure the trustee of the Wyche estate gave defendant an "oral option" to repurchase the property on or before September 1, 1971, for $55,000, the amount of the indebtedness formerly secured by the second lien. The trustee advised Davis that all the estate wanted was to get back the money it had in the property.

Subsequently, a real-estate agent approached Davis on behalf of a group of doctors who held an option on an adjoining tract of land and were interested in erecting a building on the two tracts. The agent presented an option contract specifying a price of $242,000, but when he learned that title was held by the Wyche estate rather than by Davis, negotiations were discontinued. Davis then sought to borrow enough money to repurchase the property from the Wyche estate and consummate the proposed sale to the doctors. For this purpose, he approached defendant Campbell, with whom he was not previously acquainted. He explained to Campbell his understanding with the Wyche estate, asked for a loan of $55,000, and proposed that he purchase the property from the Wyche estate, take title in his own name, and repay the loan when the property was sold, together with ten percent interest and a "bonus" of $5,000. Campbell was interested but desired to have the property inspected by defendant Collum, a real estate broker. Collum did so and found that the property was of sufficient value. Campbell then agreed to lend the money for ten percent interest and a commission of $6,500 to be paid when the property was resold. Later, on or about August 28, 1971, two or three days before the oral option was to expire, Campbell changed the agreement and demanded that title to the property be held in the name of Collum and that Collum be paid a fee of $2,000 in addition to the $6,500 "bonus" to be paid to Campbell. Otherwise, Campbell said, he would honor his agreement. Davis objected to putting the title in Collum's name but agreed to do so because he could not raise the $55,000 himself before September 1, the deadline set by the Wyche estate. Davis asked Campbell to put their agreement in writing, but Campbell refused to do so, saying, "We'll treat you right." Davis and Campbell attended the closing of the transaction at the title company, at which the Wyche trustee conveyed the property to Collum, subject to the outstanding first lien. Davis paid transfer expenses of $635 and signed a quitclaim deed in favor of Collum. Davis says in his affidavit that he exercised his option with the Wyche estate through this transaction with defendants. From this evidence the inference may be drawn that Davis notified the Wyche trustee that the option was being exercised, that he directed the trustee to sign a deed in favor of Collum, and that the price paid for the property was approximately $55,000, the amount for which the Wyche trustee had agreed to sell the property back to Davis.

After this transaction, Davis signed a letter agreeing to pay Collum and Campbell $1,600 per month as rent on the property. Davis knew that he could not actually pay that much because the property was not earning it, but he agreed because he expected the property to be resold within a month. This agreed rent was barely enough to cover the payments due on the first lien.

Defendants' interpretation of the evidence, as stated in the brief, is that after the transfer to Collum, Davis "had a continued privilege of redemption by oral promise." This interpretation is evidently based

on Davis's testimony that Collum told Davis that he and Campbell would let Davis have the property back if he could "come up with the money." This conversation, however, appears to have taken place after the transfer to Collum and, according to Davis, was not the agreement between the parties at the time of the transfer. Davis testified that after the transfer Campbell switched the deal and said that if Davis would come in with a buyer Campbell would sell the property back to Davis and give him sixty-five to eighty percent of the profit. Davis attempted to negotiate further with representatives of the doctors who had previously indicated an interest in the property, but they refused to negotiate with him when they found that Campbell and Collum were in the picture. Davis contacted another prospective purchaser, who offered either to buy the property or lend the money, but when Davis approached Collum about the matter Collum said he would have to see Campbell, and when Davis talked to Campbell, Campbell referred him back to Collum. Davis never submitted an offer on the property because Campbell told him that they could get more money by letting the doctors have the property than by letting him buy it back.

In July 1972, defendants sold the property to the doctors for a consideration which Davis alleges to be $210,000. Collum gave Davis written notice that the property had been sold and that his lease was terminated. Davis then filed this suit, alleging that the acts of defendants had deprived him of his "equitable interest" in the property, to his damage in the amount of $90,000. Defendants answered and moved for summary judgment, alleging that plaintiff's claim was barred by the Statute of Frauds, by the Texas Trust Act, by the Real Estate License Act, and by the lease which plaintiff signed as tenant of defendants. The trial court granted the motion but did not state the ground of the judgment. Consequently, we shall consider whether any of the grounds specified and briefed on this appeal establishes the absence of a genuine issue of material fact as required by Texas Rules of Civil Procedure, rule 166–A.

The first ground specified is the Statute of Frauds, Tex.Bus. & Comm.Code Ann. § 26.01(b)(4) (Vernon 1968), which requires a written memorandum for enforcement of a "contract for the sale of real estate." Notwithstanding this statute, an oral contract which has been partly performed may be enforced in equity if denial of enforcement would amount to a "virtual fraud" in the sense that the party acting in reliance on the contract has suffered a substantial detriment, for which he has no adequate remedy, and the other party, if permitted to plead the statute, would reap an unearned benefit. Texas Co. v. Burkett, 117 Tex. 16, 296 S.W. 273, 279 (1927); Matthewson v. Fluhman, 41 S.W.2d 204, 206 (Tex.Comm'n App.1931, jdgmt. adopted); 2 Corbin on Contracts § 429 (1950). A purchaser may bring an oral contract within this rule by showing (1) payment of the consideration, (2) possession of the property, and (3) valuable improvements or other facts that would make the transaction a fraud on the purchaser if the contract is not enforced. Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 1116 (1921). Likewise, a vendor may be entitled to enforce the oral contract if he shows performance of the contract by delivery of possession to the purchaser and a detrimental change of position, for which the vendor has no adequate remedy. Texas Co. v. Burkett, *supra*; Morris v. Gaines, 82 Tex. 255, 17 S.W. 538, 539 (1891); 2 Corbin on Contracts § 424 (1950); and *cf.* Kirk v. Beard, 162 Tex. 267, 345 S.W.2d 267, 270 (1961) (oral agreement to make mutual wills); Newsom v. Newsom, 378 S.W.2d 842 (Tex.1964) (lessor permitted to recover rent stipulated in oral lease for more than one year).

In the light of these authorities we conclude that the circumstances above recited justify enforcement of the contract notwithstanding the Statute of Frauds. After

plaintiff had lost title to the property by foreclosure, he may have had no legal interest in the land, or even any enforceable equitable interest, but he had something of substantial value. He had the promise of the record owner to let him repurchase the land at a certain price, and he also had the prospect of a sale to a group of purchasers who already held an option on the adjoining land and had indicated an interest in buying the land in question at a price substantially in excess of that for which the owner had promised to sell it to plaintiff. The evidence supports the inference that when plaintiff approached Campbell for a loan, Campbell persuaded him to exercise his option in favor of Collum but otherwise promised to compensate plaintiff in accordance with plaintiff's proposal. The evidence supports the further inference that plaintiff fully performed his duty under the oral agreement by exercising his option and directing the Wyche trustee to sign a deed in favor of Collum. Plaintiff also paid the costs of the transfer and executed a quitclaim deed in favor of Collum.

By this transaction Davis sustained a substantial detriment in that he gave up any chance he had of purchasing the property for himself under the terms of his oral option. He has no other remedy because that option cannot be restored to him. Defendants, on the other hand, were enabled to purchase the property and sell it again at a price which plaintiff alleges to have produced a substantial profit. They obtained the benefit of whatever value plaintiff's interest may have had by promising to pay him a part of their profit on resale of the property, in accordance with his proposal. They still retain that benefit, but they resist enforcement of their promise on the ground that it was not in writing. This conduct amounts to more than a simple breach of promise. Retention of the benefits of the oral contract without payment of the agreed consideration amounts to a virtual fraud, which justifies enforcement of the contract under the doctrine of part performance, as laid down in the authorities above cited. We hold that plaintiff's affidavit and deposition raise a genuine issue of material fact in this respect.

▆▆▆ Defendants argue that plaintiff had nothing of value to sell them because his oral option to repurchase the property from the Wyche estate was unenforceable. Defendants have no standing to raise this question. The oral promise of the Wyche trustee was as good as a legally binding option so long as the trustee was willing to honor it. Since the trustee did honor it and defendants got the benefit of it when the trustee conveyed the land to defendant Collum at plaintiff's direction, lack of enforceability of the option is no defense to plaintiff's claim for compensation. An oral agreement for sale of land is not void but merely unenforceable, and when the parties have acted on it, other persons have no standing to raise the question of enforceability. Avinger v. Campbell, 499 S.W.2d 698 (Tex.Civ.App.—Dallas 1973, writ ref'd n. r. e.); Murphy v. Johnson, 439 S.W.2d 440 (Tex.Civ.App.—Houston [1st Dist.] 1969, no writ); McManus v. Matthews, 55 S.W. 589 (Tex.Civ.App.—1900, writ ref'd); and cf. Clements v. Withers, 437 S.W.2d 818, 821 (Tex.1969). In Avinger v. Campbell, supra, we had before us an "oral option" and specifically held that third parties could not attack it as unenforceable under the Statute of Frauds. See also Orlando v. Ottaviani, 337 Mass. 157, 148 N.E.2d 373, 376 (1958), in which plaintiff's exercise of an oral option in favor of defendants was held sufficient performance to justify enforcement of an oral promise to convey part of the land, notwithstanding the Statute of Frauds.

▆▆▆ Neither will defendants be heard to say that the oral option had no value because it was about to expire and plaintiff could not raise the money to exercise it. Plaintiff did raise the money by negotiating with defendant Campbell. Campbell was willing to advance the money on the basis

of Collum's appraisal. If Campbell had not agreed initially to advance the money, plaintiff would have had more time to raise the money from some other source. Defendants argue that they could probably have bought the property on the same terms from the Wyche trustee after September 1, when the oral option expired. This is speculation. The evidence would support an inference that defendants chose rather to deal with the Wyche estate on the basis of plaintiff's option and yielded to plaintiff's insistence to close the deal before the option expired. After acquiring the property on that basis, they are in no position to say that the option was without value to them.

The other grounds specified in defendant's motion for summary judgment become similarly untenable when the oral contract is viewed as a sale by plaintiff of his interest under the oral option. No unenforceable trust is involved, since plaintiff's "equitable interest" after the transfer to Collum was not an interest in the land, but only an equitable claim for compensation arising out of the oral contract. No brokerage fee is involved because plaintiff was acting for himself in selling his own interest to defendants. The Real Estate License Act does not apply to a sale by an owner of his own property. Tex.Rev.Civ. Stat.Ann. art. 6573a, § 6(4) (Vernon 1969); and see Harvey v. Brown, 80 Idaho 379, 330 P.2d 982, 985 (1958). Lastly, plaintiff's acknowledgment of Collum's title to the property by signing the lease agreement is entirely consistent with a previous sale by plaintiff of his interest under the oral option.

For the reasons stated, plaintiff's points of error are sustained, and the cause is remanded for trial.

Reversed and remanded.

WILLIAMS, C. J., not sitting.