# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00080-CV

**Jerry L. Reasonover, Martha Reasonover and UMM, Inc./Commercial Indemnity Insurance Company, Appellants**

**v.**

**Commercial Indemnity Insurance Company/Jerry L. Reasonover, Martha Reasonover and UMM, Inc., Appellees**

### FROM THE DISTRICT COURT OF TRAVIS, 250TH JUDICIAL DISTRICT NO. 96-02353A, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

This is an appeal of a summary judgment rendered against appellants Jerry L. Reasonover, Martha Reasonover and UMM, Inc. (collectively "the Reasonovers") on Commercial Indemnity Insurance Company's ("Commercial Indemnity") suit to recover for amounts it paid pursuant to a performance bond issued to John Yunker and UMM, Inc. The Reasonovers challenge the granting of the summary judgment against them. Commercial Indemnity also complains of the trial court's failure to award attorney's fees expressly relating to an appeal of the judgment. We will affirm the judgment of the trial court in all respects.

### Factual and Procedural Background

Commercial Indemnity issued a performance bond on behalf of Charles Yunker and UMM, Inc., as contractors, to secure the performance of a construction contract to repair and

remodel an apartment complex for Tucker Family Investments One Limited Partnership ("Bond Obligee"). In consideration for Commercial Indemnity's issuance of the bond, an Agreement of Indemnity was executed by John Yunker, and by J.L. Reasonover and Martha Reasonover, individually and on behalf of UMM, Inc. Martha Reansonover signed the indemnity agreement individually and in her capacity as president of UMM, Inc. By the indemnity agreement, the parties agreed to:

> exonerate, hold harmless, indemnify and keep indemnified the SURETY [Commercial Indemnity] from and against any and all claims, demands and liabilities for losses, costs, and expenses of whatsoever kind or nature, including court costs, counsel fees, investigative costs, and from and against any and all other such losses and expenses which the SURETY may sustain or incur: (A) By reason of having executed or procured the execution of BONDS; (B) By reason of the failure of the CONTRACTOR or Indemnitors to perform or comply with any of the covenants or conditions of this Agreement; (C) In enforcing any of the covenants or conditions of this Agreement; (D) In making any investigation, obtaining or attempting to obtain a release, or recovering or attempting to recover loss or unpaid bond premium in connection with any BOND; (E) In prosecuting or defending any action or claim in connection with any Bond, . . . . **In the event of any payment by the SURETY, the CONTRACTOR and Indemnitors agree . . . that the vouchers or other evidence of any such payments made by the SURETY shall be prima facie evidence of the fact and amount of the liability to the SURETY**. (Emphasis added.)

Although Martha and Jerry Reasonover complain that Yunker was not authorized to sign the bond on behalf of UMM, Inc.,[1] they do not dispute that each signed the indemnity agreement in the capacities and for the consideration stated therein.

---

[1] The Reasonovers asserted this argument as a defense in the court below, but they do not urge it as an issue in this appeal.

The Bond Obligee subsequently sued the bond principals based on their alleged breach of contract, breach of the implied warranty of good and workmanlike services, violation of the Texas Deceptive Trade Practices Act and other torts in Cause No. 64-3591-A, filed in the 28th District Court of Travis County, Texas. The suit sought $300,000 in actual damages as well as statutory and exemplary damages.

Commercial Indemnity defended the lawsuit and eventually settled it by paying the Bond Obligee $22,500. In defending the suit, Commercial Indemnity also incurred attorney's fees in the amount of $24,548.82 and litigation expenses in the amount of $1,400.13. In turn, Commercial Indemnity called upon Yunker, as Contractor, and the Reasonovers, as Indemnitors, to reimburse it for the settlement, attorney's fees, and litigation expenses incurred in connection with the Bond Obligee's claim. It is undisputed that neither Yunker nor the Reasonovers have tendered any payment to Commercial Indemnity under the indemnity agreement.

Commercial Indemnity then sued Yunker and the Reasonovers in the court below for breach of the indemnity agreement seeking reimbursement of the amount of the settlement, attorney's fees, and litigation expenses incurred in defending the Bond Obligee's lawsuit, as well as attorney's fees and costs incurred in suing to enforce the indemnity agreement. Yunker defaulted in the suit, and the court severed Commercial Indemnity's claims against the Reasonovers.

In defense against these claims, the Reasonovers alleged that they participated in the settlement negotiations in the underlying lawsuit and that they agreed to contribute only one-third, or $7,500, of the settlement amount of $22,500. They also alleged that they had a separate agreement with Commercial Indemnity that they would receive an offset of $3,500, which represented

3

a bond premium they allegedly paid but which Commercial Indemnity never earned. They asserted this offset reduced their liability under the indemnity agreement to $4,000. The Reasonovers do not dispute that they have not tendered any of the $4,000 they admit they owe.

Commercial Indemnity moved for summary judgment based upon the indemnity agreement. It presented affidavits and documentation of the performance bond, indemnity agreement, settlement drafts paid to the Bond Obligee, statements for legal services in connection with the underlying lawsuit and drafts in satisfaction of those statements and other litigation expenses. It also submitted excerpts of the oral depositions of the Reasonovers demonstrating that they were each aware of the existence and effect of the bond and the indemnity agreement.

The Reasonovers filed a response to Commercial Indemnity's motion for summary judgment. In support of their response, they presented the affidavits of Martha and Jerry Reasonover. These two affidavits are virtually identical in substance. Martha Reasonover's affidavit states in relevant part:

3. I did execute the Agreement of Indemnity. . . I signed the Agreement of Indemnity individually and as President of UMM, Inc.

* * *

5. On August 25, 1995, I attended a mediation in . . . Cause No. 94-3591-A [the Bond Obligee's lawsuit]. The case was not settled at mediation, but subsequently settled in September 1995. In connection with the settlement, UMM, Inc. agreed to contribute $7,500.00 towards a total settlement of $22,500.00 to be paid to [the Bond Obligee]. I made this agreement as President of UMM, Inc. with Melvin Corley, attorney for Commercial Indemnity Insurance Company and John Yunker.

6. Subsequent to the settlement agreement in the [Bond Obligee's] lawsuit, I spoke to Mr. Corley and Mr. Corley gave UMM, Inc. a credit of $3,500.00 against the

4

$7,500.00 settlement contribution thereby reducing UMM, Inc.'s portion of the settlement to $4,000.00. The $3,500.00 credit represented a bond premium previously paid by UMM, Inc. to Commercial Indemnity Insurance Company.

7. Commercial Indemnity Insurance Company never requested payment of the $4,000.00 towards the settlement, but instead filed this action.[2]

On November 2, 2000, the trial court granted a summary judgment against the Reasonovers on the principal sum of $47,048.82, pre-judgment interest of $23,857.26, and attorney fees of $11,000.00. On December 1, 2000, the Reasonovers filed a motion for new trial which was overruled by operation of law.

## The Defense to the Indemnity Claim

The Reasonovers challenge the granting of the summary judgment against them. The propriety of a summary judgment is an issue of law for the court, subject to *de novo* review. *Roland v. DaimlerChrysler Corp.,* 33 S.W.3d 468, 469 (Tex. App.—Austin 2000, pet. denied). The appellate court applies the following standards: (1) a summary judgment movant has the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in determining whether a material fact issue exists, evidence favorable to the nonmovant is taken as true; and (3) every reasonable inference is indulged in favor of the nonmovant. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548-49 (Tex. 1985); *Wallerstein v. Spirt*, 8 S.W.3d 774, 780 (Tex. App.—Austin 1999, no pet.).

---

[2] Commercial Indemnity presented as summary judgment proof a letter dated January 26, 1996, from Melvin Corley to the Reasonovers and Yunker demanding payment of the full amount of the settlement, as well as defense costs.

An indemnity agreement is a promise to safeguard or hold harmless the indemnitee against existing or future liability. *Dresser Indus., Inc. v. Pate Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). Generally, an indemnity provision obligates the indemnitor to protect the indemnitee against claims brought against it by third persons who are not parties to the indemnity contract. *Wallerstein*, 8 S.W.3d at 780. The agreement creates a potential cause of action in favor of the indemnitee against the indemnitor. *Dresser Indus., Inc.*, 853 S.W.2d at 508. In order for a settling indemnitee to recover the amount paid in settlement from its indemnitor, it must show the indemnitor's potential liability to a claimant and that the settlement was reasonable, prudent and made in good faith under the circumstances. *Amerada Hess Corp. v. Wood Group Prod. Tech.,* 30 S.W.3d 5, 10 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

Nothing in the record indicates that the Reasonovers contested either Yunker or UMM, Inc.'s liability exposure in the Bond Obligee's suit or the reasonableness, prudence and good faith of Commercial Indemnity's settlement of that suit. Rather, the record shows that both Martha and Jerry Reasonover participated in the settlement negotiations and were aware of and apparently assented to the terms of the settlement with the Bond Obligee.

Commercial Indemnity's summary judgment proof established its right to judgment on its indemnity claim as a matter of law. It proved the existence and terms of the indemnity agreement and its payment of sums in defense and settlement of the underlying lawsuit. *See Shaw v. Massachusetts Bonding & Ins. Co.*, 373 S.W.2d 553, 558 (Tex. Civ. App.—Dallas 1963, no writ) (holding, in suit to recover on performance bond, that presentation of vouchers or drafts reflecting

6

payment of settlement is sufficient evidence in light of contractual provision that such exhibits were to be "conclusive evidence of the fact and extent of the liability of the surety.").

The Reasonovers, however, claim that their affidavits establish the affirmative defenses of offset and some species of settlement. Their defenses are premised on two oral agreements that Martha Reasonover allegedly made with Commercial Indemnity's attorney, Melvin Corley. The only mention in the record of these agreements is contained in the two Reasonover affidavits. The Reasonovers contend that their affidavits were sufficient to raise a fact issue as to the indemnity claim. We disagree.

Commercial Indemnity filed written objections to the Reasonover's affidavits objecting based on hearsay, among other things. The trial court impliedly sustained their objections by granting the summary judgment. *See* Tex. R. App. P. 33.1(a)(2)(A). This objection is well-founded. *See Natural Gas Clearinghouse v. Midgard Energy Co.*, 23 S.W.3d 372, 380 (Tex. App.—Amarillo 2000, pet. denied).

The Reasonovers' affidavits do not detail the facts surrounding the making of either an agreement to limit the Reasonovers' liability for the settlement or an agreement to offset their liability with a premium they allegedly paid at some earlier date. They also fail to set forth the terms and parameters of the alleged agreements. They tendered no documentary evidence to corroborate the affidavit testimony, *e.g.*, correspondence regarding the settlement agreement or drafts showing payment of the particular premium involved in the offset claim. Further, Martha Reasonover's

7

affidavit asserts merely that UMM, Inc. agreed to contribute an amount toward the settlement and that the attorney agreed to reduce that amount with an offset. Neither affidavit even suggests that by agreeing to contribute to a settlement, and receive an offset against that settlement contribution, that Commercial Indemnity agreed to limit the Reasonovers' liability under the parties' indemnity agreement to that amount.

We note that both the Reasonovers are interested witnesses so that any testimonial evidence by them must be "clear, positive and direct, and otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." *See* Tex. R. Civ. P. 166a(c). Moreover, the pertinent testimony in the affidavits is conclusory. They merely describe Martha Reasonover's personal interpretation and opinions about her alleged uncorroborated conversations with a third party. It is clear from Jerry Reasonover's affidavit that his testimony regarding the alleged agreements was not based on his personal knowledge. Without personal knowledge and more specific factual details about the alleged agreements with Commercial Indemnity, these affidavits cannot be considered competent summary judgment evidence. *See Avinger v. Campbell,* 499 S.W.2d 698, 702 (Tex. Civ. App.—Dallas 1973), *writ ref'd n.r.e.*, 505 S.W.2d 788 (Tex. 1974) (per curiam) (holding that affidavit testimony amounting to "interpretations of conversations not otherwise detailed and . . . opinions concerning the legal effect of transactions not factually described" and showing a lack of personal knowledge was not competent summary judgment evidence).

We overrule the Reasonovers' sole issue on appeal.

8

**<u>Cross-appeal: Appellate Attorney Fees</u>**

Commercial Indemnity's cross-appeal complains of the trial court's refusal to award it appellate attorneys fee. The original petition pleaded for recovery of attorney fees and legal expenses incurred in collecting under the indemnity agreement. The summary judgment motion sought and presented evidence on a claim for attorney fees, including an express request for conditional attorney fees if the Reasonovers appealed the summary judgment.[3] The judgment awarded Commercial Indemnity $11,000.00 in attorney fees for prosecution of the collection action, but did not segregate the fees for any particular phase of proceedings or expressly provide for appellate attorney fees. The judgment states:

> IT IS FURTHER ORDERED that all relief requested by Plaintiffs is granted and that Plaintiff have and recover from Defendants the sum of $47,048.82, together with pre-judgment interest in the sum of $23,857.26. ¶ IT IS FURTHER ORDERED that Plaintiff have and recover . . . attorneys' fees in the amount of $11,000 incurred in the prosecution of this suit.

Commercial Indemnity argues that, because it requested appellate attorney fees and the trial court granted its motion, the trial court effectively awarded it appellate attorney fees but failed to set forth appellate attorney fees in the judgment. We disagree. The judgment plainly awarded a specific amount of attorney fees for "prosecution of this suit," which could include appellate matters. Commercial Indemnity's motion differentiated between attorney fees for trial work and appellate work, but the judgment did not.

---

[3] We note that the issue of attorney fees in responding to an appeal by the Reasonovers is no longer contingent in nature.

On December 22, 2000, Commercial Indemnity filed a Plaintiff's Motion For Judgment Nunc Pro Tunc in which it asserted that the court's failure to award it appellate attorney fees was a clerical error. It sought to have the November 2, 2000, order vacated and another judgment substituted therefor. On January 19, 2001, the trial court held a hearing on that motion at which argument, but no evidence, was presented.

Commercial Indemnity moved for judgment *nunc pro tunc.* A trial court may make substantive, judicial rulings only while it has plenary power in a case. *Andrews v. Koch,* 702 S.W.2d 584, 585 (Tex. 1986); Tex. R. Civ. P 316 & 317. After its plenary power expires, a trial court has no power to correct a substantive or judicial mistake. *Dikeman v. Snell*, 490 S.W.2d 183, 186 (Tex. 1973). A trial court may then correct only non-substantive, clerical mistakes in the judgment. *West Texas State Bank v. General Res. Mgmt Corp.,* 723 S.W.2d 304, 306 (Tex. App.—Austin 1987, writ ref'd n.r.e.). If a trial court renders a judgment after its plenary power lapses correcting a non-judicial clerical error, the judgment is termed a "judgment nunc pro tunc." By definition, such a judgment may only be rendered after plenary power has expired.

At the time the trial court ruled on Commercial Indemnity's motion, it retained its plenary powers so that rendition of a *nunc pro tunc* judgment would have been inappropriate. Although Commercial Indemnity labeled its request a motion for judgment *nunc pro tunc*, we will not elevate form over substance as the Reasonovers urge. Commercial Indemnity sought to modify the judgment to provide for recovery of additional attorney fees. The substance of the motion was sufficient to present the issue of appellate attorney fees to the trial court and preserve the issue for appeal.

Although the trial court recognized the misnomer in Commercial Indemnity's motion, that misnomer was not the only basis on which it could deny appellate attorney fees. The trial court could have concluded that the affidavit submitted was internally inconsistent with respect to the proof of attorney fees.

In support of its claim for attorney fees, Commercial Indemnity submitted the affidavit of attorney Karen J. Gregory, who testified in relevant part:

> Considering the time spent in the investigation and preparation of the lawsuit, including drafting the various letters, pleadings, discovery and the motion for summary judgment, it is my opinion that $11,000.00, is a reasonable amount of attorneys' fees and expenses for representation of the Plaintiff through the hearing on the Motion for Summary Judgment. 5. In addition, the amount of $11,000.00 is a reasonable amount for attorneys' fees in the event an appeal to the Court of Appeals is made. The additional sum of $5,000.00 in attorneys' fees is reasonable in the event CIIC must file its brief in an appeal to the Supreme Court of Texas and an additional sum of $2,500.00 in attorneys' fees is reasonable in the event of an oral argument before the Supreme Court.

It is unclear whether the affiant was testifying to an $11,000.00 figure for an appeal to the court of appeals in addition to $11,000.00 for prosecution of the case through the summary judgment hearing or whether work on both the trial and initial appellate levels were included in the same $11,000.00. In its brief, Commercial indemnity recognizes an ambiguity and states:

> Even if the conflict with the summary judgment evidence and the request for attorneys' fees in the Summary Judgment Motion prevented the Trial Court from awarding appellate attorneys' fees, the Trial Court had discretion to award what it deemed a reasonable amount . . .in the event of . . .appeal.

11

In any event, Commercial Indemnity must demonstrate that the trial court's award of $11,000 for all matters in this case constituted an abuse of discretion. A trial court clearly has discretion in assessing whether to award attorney fees and the amount of attorney fees to be awarded in a particular case. Here, the amount the trial court awarded falls within the range of proof presented. Based on the record before us, we cannot conclude that the trial court abused its discretion in awarding attorney fees. *See, e.g.*, *McFadden v. Bresler Malls, Inc.,* 548 S.W.2d 789, 790 (Tex. Civ. App—Austin 1977, no writ) (courts have discretion to determine the amount of attorney fees in light of their experience as justices and as lawyers, the record as a whole, the testimony and the amount in controversy.); *Leggett v. Brinson*, 817 S.W.2d 154, 157 (Tex. App.—El Paso 1991, no writ); *Argonaut Ins. Co. v. ABC Steel Prods., Co.,* 582 S.W.2d 883, 889 (Tex. Civ. App.—Texarkana 1979, writ ref'd n.r.e.).

The judgment of the trial court awarding Commercial Indemnity the principal sum of $47,048.82, pre-judgment interest of $23, 857.26 and $11,000.00 of attorney fees for "prosecution of this suit" is affirmed.

Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Affirmed

Filed: October 4, 2001

Do Not Publish