J. M. LEGGIO, Appellant,

v.

MILLERS NATIONAL INSURANCE CO., et al., Appellees.

No. 174.

Court of Civil Appeals of Texas.

Tyler.

Dec. 30, 1965.

Rehearing Denied Feb. 3, 1966.

**608**

Wm. Andress, Jr., Andress, Woodgate, Richards & Condos, Fleming Waters, Sanders & Nolen, Dallas, for appellant.

Robert M. Ewing, Witts & Ewing, Dallas, for appellees.

MOORE, Justice.

Appellant J. M. Leggio brought this suit against appellees, Millers National Insurance Co., Commercial Union Insurance Co. of New York, Agricultural Insurance Company and Security Insurance Company of New Haven, upon four separate fire insurance policies issued by each of the appellees in the sum and amount of $5,000.00, insuring a building owned by appellant and situated in the City of Dallas. Appellant's pleadings allege that on October 31st, 1963, the said building was destroyed by fire resulting in a total loss. Appellees denied liability on the policies, alleging that the appellant had no insurable interest in the building at the time of the fire and further alleged that even though he did have insurable interest, he suffered no pecuniary loss because his tenant later constructed a building of equal value on the premises. Trial was before a jury and in response to the five Special Issues submitted by the court, the jury found that: (1) the fire caused a total loss of the building in question; (2) the reasonable cash market value of the building in question immediately before the fire was $17,500.00; (3) appellant J. M. Leggio had an insurable interest in the building; (4) the building in question was not vacant for a period of more than 30 days immediately preceding the fire; (5) the removal by J. M. Leggio of the front door, wood paneling, flooring, light fixtures and other items, if any, from the building before the fire did not materially increase the hazard of fire.

Upon motion of the appellees, the trial court granted a judgment notwithstanding the verdict denying appellant, J. M. Leggio, any recovery upon the policies of fire insurance. Appellant has perfected this appeal, contending that the jury's verdict

was supported by the evidence and the trial court therefore had no authority to grant judgment non obstante.

The record reveals that on July 15, 1963, Leggio leased the building to Anthony's, Inc. to be used as a restaurant. The company made considerable improvements in the building such as installing lighting fixtures, paneling the walls, installing new floor decking, replacing the front door and installing other equipment ordinarily found in a rather exclusive cafe. Shortly before the fire, Anthony's, Inc. went out of business and assigned the lease to Hughes-Peters who subsequently assigned it to Miracle Ford Company.

Section 14 of the lease provided that in the event the building should be totally destroyed by fire or damaged to such an extent that repairs could not be completed within 120 days the lease would terminate, but if not so damaged and repairs could be completed within 120 days, the landlord was obligated to rebuild or repair the same in substantially the same condition as existed prior to the fire.

Section 27(B) granted the lessee the following option:

"Tenant shall have the right to tear down and remove the existing structures provided he replaces the same with equal or better structures, submits to landlord for approval written plans and specifications for the new structures, 30 days prior to the removal of existing structures, and when new structures are completed to pay all ad valorem taxes to all taxing authorities thereafter. Any new structures placed upon the demised premises shall become the property of landlord."

Section 27(D) provides:

"Notwithstanding other provisions of this lease regarding damage and repairs to the property, landlord shall not be required to expend more than $20,-000.00 in repairing or rebuilding the improvements that might be damaged by fire, tornado or other casualty but tenant may make such additional contribution to repairs as he wishes and may carry insurance to cover such additional repairs."

Appellees take the position that the evidence shows as a matter of law that appellant Leggio had no insurable interest at the time of the fire because Miracle Motor Company had theretofore exercised their option to demolish the building and replace the same with a new building and that appellant had accepted and approved such plan. The argument advanced by the appellees is that after the option was exercised and approved by Leggio, the building was of no further use to him and therefore he could not expect any pecuniary benefit or advantage by its preservation and continued existence. In effect, they contend that he had disposed of the building and therefore could have no insurable interest, hence the court correctly denied any recovery for a total loss of the building. In any event, appellees contend that under the undisputed evidence, Leggio suffered no pecuniary loss because Miracle Ford Company rebuilt other structures on the property in excess of the amount of insurance and thus for this additional reason, they contend the trial court correctly denied appellant any recovery.

■ Upon the question of insurable interests, the Supreme Court of this state in Smith v. Eagle Star Insurance Co., 370 S.W.2d 448, adopted the following quotation contained in 29 Am.Jur. 781, Insurance, Sec. 438:

" 'The principle may be stated generally that anyone has an insurable interest in property who derives a benefit from its existence or would suffer loss from its destruction.' "

Upon the question of whether or not an insured has sustained a pecuniary loss, the Supreme Court of this state in Paramount Fire Insurance Company v. Aetna Casualty

& Surety Company, 163 Tex. 250, 353 S.W.2d 841, has adopted the rule that there is no pecuniary loss when the loss has been made good out of a related transaction, holding as follows:

> "The court looks to the substance of the whole transaction rather than to seek a metaphysical hypothesis upon which to justify a loss that is no loss. This is not a case where a stranger to the transaction, out of charity, or for other reasons, might make good the loss * * *. The loss has been made good out of a related transaction * * *."

It may be conceded that the foregoing cases form the basis of the defenses asserted by appellees.

■ Before applying these legal principles, however, we must first determine the primary question of whether or not at the time of the fire, the lessee had exercised its option to demolish and rebuild in accordance with the terms of the lease as set forth in Paragraph 27(B) and whether the lessor had accepted and approved the exercise of the option. If the option was effectively exercised and accepted before the fire, appellant would no longer have any pecuniary interest in the continued existence of the building and would thus have no insurable interest. If, on the other hand, the option was not exercised and accepted before the fire, appellant would have continued to have an insurable interest because of his pecuniary interest in the building and the lease contract and there would be no related transaction. The inquiry therefore involves questions of fact.

In 13 Tex.Jur.2d, page 161–2, Sec. 37, it is said:

> "An option is merely an offer that binds the optionee or holder of the option to do nothing; he may or may not accept the offer, as he chooses, within the time specified. Until it is accepted, an option is not, in legal effect, a completed contract. However, when ac-

cepted within the time limited and in the manner specified, an option becomes a completed contract that is binding on both parties."

In Vratis v. Baxter, Tex.Civ.App., 315 S.W.2d 331, at 337, the court held:

> "The acceptance of an option, to be effectual, must be unqualified, absolute, unconditional, unequivocal, unambiguous, positive, without reservation, and according to the terms or conditions of the option. Substantial compliance with the terms of the option is held not sufficient to constitute an acceptance; to be effectual, the acceptance must be identical with the offer, or, at least, there must be no substantial variation between them. An acceptance of an option must be such a compliance with the conditions as to bind both parties, and if it fails to do so it binds neither."

By granting a judgment notwithstanding the verdict of the jury, the trial court ruled, in effect, that as a matter of law appellant had no insurable interest at the time of the fire, or if he did have, he suffered no pecuniary loss because of a related transaction. We find ourselves unable to agree with the conclusion for the following reasons.

■ It is fundamental that a reviewing court, in passing upon a contention that there is no evidence to sustain a jury's finding, whether raised by a "no evidence" point or by a motion for judgment notwithstanding the verdict or by a motion for instructed verdict, must view the evidence in a light most favorable to the appellant, indulging every legitimate conclusion favorable to him, and disregard all evidence adverse to the appellant. Fitz-Gerald v. Hull, 150 Tex. 39, 237 S.W.2d 256; Texas & P. Ry. Co. v. Hagenloh, 151 Tex. 191, 247 S.W.2d 236.

Viewed in a light most favorable to appellant, we think the testimony shows that while both parties to the lease contemplated that the option would be exercised and had

actually made some preparation for the demolition of the building prior to the fire, yet they had not gone far enough to reach a definite agreement.

In our search of the record we have been unable to find any evidence that either Miracle Ford or any of the previous lessees ever complied with the provisions of Section 27(B) of the lease. This section specifically provides that the existing building was not to be torn down until lessee " * * *submits to landlord for approval written plans and specifications for the new structures, 30 days prior to the removal of existing structures, * * * " (Emphasis ours).

Richard L. Blosser, president of Miracle Ford, testified that at the time of the fire the building was still in use and although he gave the appellant and his family permission to remove various items from the building and was contemplating building a new building, demolition had not commenced. Nowhere in his testimony does he state that he delivered written plans and specifications of a new building to appellant which were approved by him.

Subsequent to the fire, he testified that Miracle Motor Company constructed on the premises a building at a cost of $12,500.00, together with appurtenances at a cost of five to six thousand dollars and also another metal building at a cost of ten to twelve thousand dollars. Nowhere, however, did he testify that these improvements were constructed in accordance with plans and specifications approved by the appellant prior to the fire. There is nothing in his testimony showing that Miracle Motor Company ever called upon appellant to rebuild or repair in accordance with the lease contract.

Appellant testified that at various times he had given each of the tenants his consent to proceed with the construction of another building; however, we find nothing in his testimony indicating that he was ever furnished any written plans and speci-

fications of the proposed building or that he ever approved such. At one point in his testimony he did admit that "with the construction of the new building, they had submitted some plans and a sketch," however, he did not admit that he ever approved same, nor does his testimony show whether the "plans and sketch" were submitted before the fire or whether they were submitted after the fire just prior to the time Miracle Motor made their improvements. The "plans and sketch" were never produced in the trial court and are therefore not before us. Appellant also testified that the improvements made by Miracle Motor Company consisted of only a sales office containing 400 square feet which was not of like value to the building destroyed.

At most, we think the evidence will only raise an issue of fact upon the question of whether or not the option was exercised and accepted, and would not be sufficient to establish the question as a matter of law. The trial court, however, failed to submit any issues inquiring of any of the facts and circumstances in connection with the exercise or acceptance of the option.

Both the question of insurable interest and the question of whether appellant's loss was made good by a related transaction were legal defenses raised by appellees' pleadings. The basis of these defenses must turn upon the facts and circumstances surrounding the alleged exercise and acceptance of the option.

■ It is without dispute that at the time the policies were issued appellant had an insurable interest. If the facts and circumstances had changed in the meantime, the insurance companies had the burden of proving facts showing a lack of insurable interest. Texas Lloyds Ins. Co. v. Harburger, (Tex.Civ.App.) 252 S.W.2d 957; 32 Tex.Jur.2d, par. 528, page 773.

■■ In order to establish their defense, appellees had the burden of requesting the submission of issues inquiring of the status of the fact situation created by the appellant

and his lessee at the time of the fire. This the appellees failed to do and therefore waived the submission of these issues forming the basis of the alleged defense. The defenses, not having been conclusively established, must be deemed to have been waived. Rule 279, Texas Rules of Civil Procedure.

We do not overlook the fact that in response to Special Issue No. 3 the jury found that appellant had an insurable interest; however, since the question propounded to the jury was a legal question, we think the court was authorized to consider the finding as immaterial. Jones v. Winter, (Tex.Civ.App.) 215 S.W.2d 654.

There being ample evidence to support the jury's finding that the building was a "total loss" and appellees having failed to sustain their burden of obtaining jury findings establishing their defenses, the cause must be reversed and rendered in favor of appellant J. M. Leggio.

Reversed and rendered.