James Earl **WRIGHT** et ux.,
Appellants,

v.

Edward **POVLISH** et ux.,
Appellees.

No. 798.

Court of Civil Appeals of Texas,
Corpus Christi.

Aug. 31, 1973.

Rehearing Denied Sept. 24, 1973.

Howard & McDowell, Virgil Howard, Tom McDowell, Corpus Christi, for appellants.

Newton & Handly, Jon Newton, Beeville, for appellees.

## OPINION

YOUNG, Justice.

This is a suit for specific performance of a land sales contract. James Earl Wright and wife, as purchasers, sued Edward Povlish and wife, as vendors, requesting specific performance and, in the alternative, reformation of a written contract for the sale of 58.8 acres of land in Bee County, Texas. In their answer defendants claimed the description of the land in the contract was insufficient to satisfy the Statute of Frauds.

The trial was before the court, without a jury. On findings of fact and conclusions of law the trial court rendered judgment that the plaintiffs take nothing. From that judgment the plaintiffs appeal.

The property is described in the contract of sale as follows:

". . . situated in Bee County, Texas, to-wit: 58.8 acres out of the John

Thompson Malloy Survey Abstract no. 43, Patent no. 57, Volume 60, dated July 15, 1835. Legal description attached."

Whether any description was ever attached before suit was filed is disputed. But what the appellants contend was attached is only a metes and bounds description of an entire 152.12 acre tract of land owned by the appellees. The appellants agree that the description, considered alone, in the contract of the 58.8 acres to be conveyed lacks the necessary particularity. However, they claim that the contract is an integral part of an overall transaction by which the appellees agreed to dispose of their entire interest in the 152.12 acre tract.

In 1960 the appellees acquired title to a 152.12 acre tract in Bee County. By four separate written contracts of sale, each dated January 25, 1970, the appellees agreed to sell what amounted to all the acreage in the entire 152.12 acre tract. By three of the contracts of sale (each on a Veterans Land Board form of the type used by applicants for aid under the Veterans Land Program), the appellees agreed to sell out of the 152.12 acre tract three separate parcels: one of 30 acres to a veteran named James Earl Wright (one of the appellants); one of 31.32 acres to a veteran named James Lee Wright; and one of 32 acres to a veteran named Ray F. Usry. No metes and bounds description is set out in any of the three veteran tracts. Except for the quantity of acreage stated, the description in each of the veteran contracts is identical. Such description specifies a particular number of acres located in the John Thomas Malloy Survey in Bee County and:

". . . said land being more particularly described in EXHIBIT 'A' attached hereto."

Attached is only a metes and bounds description of the entire 152.12 acre tract owned by the appellees. By separate deeds dated April 30, 1970 and acknowledged May 22, 1970, the appellees conveyed out of the 152.12 acre tract to the Veterans Land Board, and the Board reconveyed to the veterans, specific parcels of land, each of which was described by metes and bounds. Each parcel contained essentially the same amount of acres specified in the contract each veteran made with the appellees on January 25, 1970.

On January 25, 1970, the same day each of the three veteran contracts was executed, the appellees and the appellants entered into the real estate contract (on a title company conventional form) which appellants sue to enforce in the present case.

After the purchasers, the Wrights (appellants), James Lee Wright (appellants' son), and Ray F. Usry (appellants' cousin) and the vendors, the Povlishes (appellees), had executed the contracts dated January 25, 1970, James Earl Wright (one of the appellants) engaged a surveyor to effect a division of the 152.12 acre tract into four separate tracts. From the metes and bounds description of the 152.12 acre tract (the same description attached to each of the veteran contracts) furnished him and from an actual on the ground survey, the surveyor prepared a metes and bounds description and a plat of each tract to be conveyed to each veteran. These descriptions were the same as those used in subsequent documents: the contracts of sale between the veterans and the Veteran Land Board and the deeds from the Povlishes to the Veterans Land Board.

Later, on May 22, 1970, the Wrights (appellants), the Povlishes (appellees), and Usry met in an attorney's office in Beeville for purposes of closing all the transactions concerning the 152.12 acre tract. All the deeds conveying the veteran tracts to the Veterans Land Board were executed by the appellees (vendors). The deed, deed of trust and note securing the 58.8 acre tract (subject to this suit) had been prepared and these instruments were ready for execution. Then Mr. Wright and Mr. Povlish got into a dispute over the mineral reservation in the proposed deed, the sur-

veyor's fee and farm expenses incurred by Povlish since the original contracts were signed in January. The dispute was not resolved. Whereupon Mr. Povlish gathered up what he thought was all of the documents pertaining to all of the transactions, indicated none of his land was for sale, and departed. A few days later the appellees received a letter dated May 26, 1970, from the General Land Office inquiring when the transactions with the veterans would be closed. Thus motivated, the Povlishes (appellees) went back to the same attorney's office in Beeville and closed all of the veteran transactions without notifying the Wrights (appellants). The Wrights first knew that they were now owners of a 30 acre tract when they received a letter dated June 19, 1970, inquiring about an insurance policy that should be forwarded to the Veterans Land Board "in connection with your recent purchase from Mr. Povlish." The Wrights then attempted, with no success, to persuade the Povlishes to convey to them the 58.8 acre tract. Thereafter, this suit was filed on September 11, 1970.

Appellants' first four points are essentially no evidence and factually insufficient evidence contentions. They complain of the trial court's action in finding that the contract sued upon was not an integral part of an overall transaction comprising the subject contract and three other contracts of sale with the Veterans Land Board.

■ Written contracts executed in different instruments whereby a single transaction is to be consummated may be considered together and construed as one contract. Miles v. Martin, 159 Tex. 336, 321 S.W.2d 62 (Tex.Sup.1959); Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472 (Tex.Sup.1942). Our basic question at this point is: under what circumstances can a court look to other instruments to aid the description in the contract sought to be enforced? In that regard we deem appropriate the language set out in Morrow v.

Shotwell, 477 S.W.2d 538, 539 (Tex.Sup. 1972) as follows:

". . . To be sufficient, the writing must furnish within itself, or by reference to some other existing writing, the means or data by which the land to be conveyed may be identified with reasonable certainty."

■ Testing the Wright-Povlish contract of sale by the *Morrow* case, we find in that contract no reference to, or mention of, any of the veteran contracts. Even if we do refer to the veteran contracts, we find the description in each insufficient because the acreage set out in each of them is not identifiable. So the veteran contracts are of no aid in supplying a sufficient description to the Wright-Povlish contract.

■ By reason of the survey that was eventually made, the tracts to be conveyed to each veteran were readily identifiable and were sufficiently described to satisfy the Statute of Frauds in subsequently executed documents. But these documents were not in existence when the Wright-Povlish contract was executed on January 25, 1970. So the subsequent documents cannot be used to aid in supplying a sufficient description. Tidwell v. Cheshier, 153 Tex. 194, 265 S.W.2d 568, 569 (Tex.Sup. 1954); Hobbs v. Bass, 279 S.W.2d 480, 483 (Tex.Civ.App.—Texarkana 1955, n.r.e.).

■ The four contracts of sale all obviously relate to the same subject matter; that is, the sale of land owned by the Povlishes in the John Thomas Malloy Survey. But it is not permissible to read several instruments together because it *appears* that they relate to the same transaction. Owen v. Hendricks, 433 S.W.2d 164 (Tex.Sup. 1968). Appellants' first four points are overruled.

In their last point, being numbered 5, the appellants complain of the trial court's action in refusing to reform the contract by inserting into it the presently known suffi-

cient description of the remaining 58.8 acres of land. They assert, as their basis for reformation, that the parties were mutually mistaken as to the legal sufficiency of the description used in the contract.

In a suit to reform a written instrument in which the description of the land involved is insufficient to satisfy the Statute of Frauds, the party seeking reformation must show an agreement relative to a particular and identified tract. And such agreement, if oral, must have been made preceding, or at the time of, the execution of the written contract. The oral agreement is then treated as the binding contract and the written instrument made to conform thereto. *Morrow,* supra; Continental Oil Company v. Doornbos, 402 S.W.2d 879 (Tex.Sup.1966).

The trial court, in a finding of fact, found that there was no oral agreement between the parties at any time whereby the appellees promised to convey the 58.8 acre tract which the appellants seek by reformation to have described in the contract sued on. Mr. Wright (an appellant) admitted that except by "guestimate", at the time of the execution of the contract sued upon, he did not know the location of the 58.8 acres mentioned in the contract. The record further shows that from the time of the signing of the contract in January till the time of the attempted closing in May, the parties were intermittently negotiating matters concerning the contract. Some of the items under negotiation were: reservation of mineral interest, foregoing payment of the earnest money, location of an easement, and farm expenses incurred. All of which is evidence of no meeting of the minds of the parties. There is also in the record evidence that each of the appellants (husband and wife) were licensed real estate dealers and knowledgeable in matters of land transactions. And they prepared all four of the contracts of sale, the one sued upon and the three veteran contracts. The fact that the parties seeking relief by reformation

were responsible for drafting the instrument sued upon is regarded by the court as an important circumstance. Clopton v. Cecil, 234 S.W.2d 251 (Tex.Civ.App.—San Antonio 1950, n.r.e.). We hold there is ample evidence in the record to support the finding. Appellants' last point is overruled.

The judgment of the trial court is affirmed.