Morin M. SCOTT, Trustee, Appellant,

v.

Tom VANDOR, Trustee, Appellee.

No. 01–83–0207–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

April 5, 1984.

Rehearing Denied May 10, 1984.

Harold Lloyd, Houston, for appellant.

Herbert N. Lackshin, Louis Gurwitch, Bernard Fischman, Lackshin & Nathan, Tom F. Coleman, Able & Coleman, Houston, for appellee.

Before DUGGAN and BULLOCK, JJ., and QUENTIN KEITH, J. (Ret.).

## OPINION

QUENTIN KEITH, Justice (Ret.), Sitting by Designation.

Defendant below appeals from an adverse judgment, based upon jury findings which awarded plaintiff's assignee specific performance of an option contract for the sale of a certain parcel of land in Harris County, Texas. The basic dispute centers around the lack of a description of the land in the option contract.

The testimony showed that in 1978 Leonard Cassack and Tom Vandor represented "West Oak Developments 200" and were seeking land near the Houston Medical Center upon which to build a multi-story residential building with at least 300 units. Cassack asked a real estate broker, Vince Vallone, to negotiate with the defendant, Morin M. Scott, the owner of the commercial tract now involved in this litigation, then being leased by Scott for use as a parking lot. Vandor and Scott entered into an earnest money contract for the conveyance of the property for a net price of $14.00 per square foot. As earnest money, Vandor was to deposit $25,000, to be held in escrow by Medical Center Bank, with the sum of $2,500 to be forfeited to the seller in the event of default by the purchaser.

Purchaser alleged the execution and subsequent oral modification of the February 6, 1979, contract for sale and obtained admission into evidence of a copy of that instrument. The contract states that

> Seller hereby sells and agrees to convey, and Purchaser hereby purchases and agrees to pay for, the tract of land in Harris County, Texas, being fully described in Exhibit "A," attached hereto and incorporated herein by reference for all purposes....

No Exhibit "A" was attached to the contract, and it is undisputed that no Exhibit "A" containing any description of the property was attached at the time the contract was executed. According to the contract, the dimensions of the property were to be determined by "a duly licensed land surveyor designated by the Purchaser and accepted by the Title Company...." The judgment appealed from awards purchaser clear title to 58,810.83 square feet, or 1.350 acres of land out of Lot 6, University Place First Subdivision in Harris County, Texas, and it includes a proper metes and bounds description. Seller claims, "There is no evidence and no pleading that the [seller] entered into a written agreement with [Vandor] to sell to him this particular tract of land."

At closing, the earnest money deposit and an additional $25,000 were to be paid to seller. The remainder of the purchase price was to be paid as follows: $50,000 plus interest on or before October 30, 1979; $50,000 plus interest on or before April 31 [sic], 1980; $100,000 plus interest on or before October 30, 1980; $100,000 plus interest on or before April 30, 1981; $200,000 plus interest on or before April 30, 1982;

and the balance of principal and interest on or before October 30, 1982.

The closing was to be held on or before April 30, 1979, at which time Scott would convey to Vandor by general warranty deed the title in fee simple, free and clear of all liens and encumberances except current real estate taxes. The deed would be held by Medical Center Bank and released to purchaser after purchaser had paid the first $150,000, that is, the initial $25,000 earnest money deposit, the $25,000 paid at closing, and the first two $50,000 installments on the promissory note.

According to the witness, Cassack, seller orally agreed to modify the preceding contract about a month prior to the closing. The purchaser would provide at closing two letters of credit of $50,000 each to secure the two $50,000 installments of principal due on October 30, 1979, and April 31 [sic], 1980, respectively. In return, seller agreed the general warranty deed would be delivered at closing.

The parties and their attorneys attended the closing April 25, 1979, at Louisville Title Company. Two objections to the closing papers submitted by the purchaser, one having to do with a restrictive covenant inadvertently omitted from the deed and one having to do with the time at which interest was to accrue on the promissory note, were resolved to seller's satisfaction. The proceeds from the $25,000 in earnest money, used to purchase a certificate of deposit at Medical Center Bank, were delivered in the form of a cashier's check. According to the purchaser's closing statement, after allowance for proration of real property taxes, the amount due from the purchaser was $21,960.26. This was tendered in the form of a check in the amount of $25,000 payable to Louisville Title Company from Rockwell Investments Ltd., one of the members of the joint venture known as West Oak Developments 200. The letters of credit were delivered to the closing officer. Apparently, there was no discussion regarding the acceptability of either the letters of credit or the tendered check at the closing. Vandor signed and deliv-

ered to the closer the promissory note and deed of trust giving seller a first mortgage and other papers, including his assignment of earnest money contract to West Oaks Developments 200. The field notes describing by metes and bounds the dimensions of the property were attached to the deed, deed of trust, and other instruments prior to their execution. The seller executed the deed and seller's closing statement, which were given to Mark Muellerweiss, the escrow officer and closer representing the title company.

According to Muellerweiss, upon conclusion of the document signing, he stated his intention to record the documents upon receipt of an executed release of lien from Medical Center Bank. Seller stated at trial he understood that the general warranty deed would be recorded.

The next day, following a conversation with broker Vallone, Cassack called seller, who informed him that Medical Center Bank would not release its lien and was unwilling to accept the letters of credit. Seller told him the "deal was off." However, the bank president's deposition testimony was to the contrary, his testimony being that the bank was prepared to release its lien.

### The Trial Sequence

Purchaser, filed his original petition and motion to enter declaratory judgment on May 16, 1979. Since he had assigned his interest in the contract, an amended petition was filed naming West Oak Developments 200, a Texas joint venture, as plaintiff. It alleged that, purchaser having performed all conditions precedent to its right to full and complete performance by seller, seller's attempted repudiation and his failure and refusal to deliver the release of lien constituted a breach of contract. Purchaser sought specific performance of seller's promise to deliver fee simple title, the reasonable rental value of the property from the closing date until entry of judgment, and abatement out of the purchase price for expenses incurred in removing encumbrances upon the title. Alternative-

ly, purchaser sought declaratory relief. Seller answered by general denial, specifically alleging failure by purchaser to exercise its option to purchase the property in strict accordance with the written contract. Seller also asserted, among its defenses, the statute of frauds, waiver, ambiguity, impossibility of performance, mutual mistake of fact, and breach of contract, and he counterclaimed for liquidated damages under the earnest money contract.

Trial was to a jury, which found that purchaser exercised the option contract in accordance with its terms and that the parties orally agreed that the deed would be delivered to purchaser at the closing. The jury found, further, that by executing the closing documents and delivering the deed at closing to the title company, the seller was estopped from requiring that the deed be delivered, instead, to the Medical Center Bank and had waived delivery of the deed to the Medical Center Bank. The jury also answered issues relating to rental value and attorney's fees.

The trial court, finding purchaser was entitled to specific performance of the contract of February 6, 1979, decreed that fee simple title and right of possession were vested in purchaser, subject to purchaser tendering into the court's registry the purchase price of the property, adjusted by certain increments and abatements. The clerk of court was to deposit this amount into a certificate of deposit or interest bearing account at Medical Center Bank and use funds in the account to discharge a promissory note in the original principal amount of $400,000 executed by seller in 1976, payable to the order of Medical Center Bank, and secured by recorded deeds of trust to the subject property. Upon delivery of a notarized release of these liens to the clerk, seller was to receive the balance of the funds on deposit. Following denial of seller's motion for a new trial, he perfected this appeal.

In his first series of points, appellant contends that the evidence was legally and factually insufficient to support the jury's finding to Special Issue No. 1, that the purchaser exercised the option contract in strict accordance with the terms thereof. Appellant also argues that the undisputed evidence disclosed that the $50,000 cash consideration mentioned in the contract was not tendered at the closing.

 The earnest money contract executed February 6 provided that seller would accept $2,500 as compensation in the event purchaser should not buy the property. Thus, the agreement was an option contract because seller was obligated to accept a specified sum in full settlement of purchaser's liabilities for default. *Broady v. Mitchell*, 572 S.W.2d 36, 40 (Tex.Civ.App. —Houston [1st Dist.] 1978, writ ref'd n.r. e.); *Smith v. Hues*, 540 S.W.2d 485, 488 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.). The option could only be accepted by purchaser's tendering full compliance in strict accordance with its terms and within the time limits provided therein, time being of the essence to an option agreement. *Smith v. Hues, supra; Tabor v. Ragle*, 526 S.W.2d 670, 675 (Tex.Civ.App. —Fort Worth 1975, writ ref'd n.r.e.). Seller's general contention and argument under points of error two, three, six, seven, eight, and ten is that purchaser never exercised its option under the earnest money contract and that the option terminated without any contract coming into existence. Specific performance of a contract to sell real estate will not be decreed if the plaintiff seeking specific performance has himself committed a material breach of the contract. *Cowman v. Allen Monuments, Inc.*, 500 S.W.2d 223 (Tex.Civ.App.—Texarkana 1973, no writ) (cited with approval in *Hudson v. Wakefield*, 645 S.W.2d 427, 430 (Tex.1983)).

 Seller contends that purchaser's performance was deficient in two ways, one having to do with the cash down payment required and the other involving the use of letters of credit. The jury found, in answer to Special Issue No. 1, that purchaser did exercise the option in strict accordance with the terms of the contract and, in answer to Special Issue No. 3, that the parties orally agreed the deed would be

delivered to purchaser at closing. Consequently, we now turn to the only relevant inquiry: whether the evidence supports those findings. In passing upon the challenges to the findings of the jury, we will follow the rules laid down in *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

Paragraph 2 of the sales contract provides that an earnest money deposit of $25,000 is to be placed by purchaser in a certificate of deposit at Medical Center Bank and an additional $25,000 is due seller at closing, the remaining principal and interest to be paid in six specified payments. Paragraph 7 provides that purchaser shall, at closing,

> (i) Pay to Seller the portion of the purchase price for the Property stipulated in Paragraph 2 hereof, which is due in cash; less credit for the earnest money deposited hereunder; and,

> (ii) Deliver to Seller a duly executed promissory note for the balance ....

At the closing on April 25, 1979, seller called Medical Center Bank and instructed the bank to send over a cashier's check for the $25,000 that purchaser's agent, Cassack, had placed in a certificate of deposit. A check in the amount of $25,299.75 was delivered by the bank's messenger, and Cassack tendered an additional check in the amount of $25,000 to the closer, as payment of the $21,960.26 still due. This latter check, Plaintiff's Exhibit No. 4, was drawn on the Texas Commerce Bank account of Rockwell Instruments, Ltd., of Montreal, Canada, and made payable to Louisville Title Company. Seller insists the tender of a personal check drawn on the account of a Canadian firm not known to seller to be a party to the transaction constitutes a failure to comply with the requirement of the contract that purchaser would pay, at closing, an additional $25,000 in cash.

But seller made no objection to the tendered check at the closing. Further, the tender of this check was not among the reasons seller gave to justify his attempted cancellation of the transaction the day following the closing.

Seller's claims that he never saw or approved the check and his complaint that it was submitted by an entity not a party to the transaction are without merit. Tom Vandor, Trustee, assigned the earnest money contract to West Oak Developments 200, a Joint Venture, at the closing, and West Oak is the grantee named in the warranty deed executed by seller. Seller was on notice that Vandor was not the purchaser, and he could have inquired as to the source of the funds.

■ The belated objection to the form of tender was waived. The word "cash" in its strict sense refers to coins and paper money, but it is also used to refer to checks and demand deposits in banks and savings institutions. *Stewart v. Selder*, 473 S.W.2d 3, 9 (Tex.1971). Nothing in the parties' contract suggests that payment by check was not contemplated. Seller may not at this late date complain that a check was an improper tender when he failed to object on that ground at the closing. *See Baucum v. Great American Insurance Co. of New York*, 370 S.W.2d 863, 866 (Tex.1963).

Seller also insists purchaser's performance under the option contract was deficient because of purchaser's attempt to alter its terms by the additional tender of two $50,000 letters of credit in return for immediate delivery of the warranty deed. Under the written contract, the executed deed was to be held by Medical Center Bank until purchaser had paid $150,000 of the total purchase price, *i.e.*, the down payment of $50,000 and the payments due in October 1979 and April 1980.

Witness Cassack testified for the purchaser that he met with seller about 30 days before the closing date to arrange some method of having delivery of the deed at closing. He said that seller agreed that, if he posted a letter of credit to guarantee the first two payments on the note and the bank was agreeable, he would not object and would deliver the deed to the purchasers at closing. This oral modification of the sales contract is corroborated by testimony of purchaser's attorney regarding a

conversation he had with seller's attorney and by a letter from seller's attorney to purchaser's attorney.

The letters of credit were delivered to the closer, Muellerweiss, at the closing, yet seller made no objection, accepted purchaser's note and deed of trust and signed the warranty deed and closing statement. At trial seller insisted, on the other hand, that he never saw and never approved the letters of credit. His testimony is conflicting as to whether he closed the transaction based upon his attorney's telling him the bank approved the letters of credit.

Seller also contends the evidence demonstrates an attempt by purchaser to exercise the option contract as modified orally, and not the option contained in the written contract. In fact, purchaser did both. In addition to the change in the date at which the title would pass from Morin M. Scott, Trustee, to purchaser, by tendering the letters of credit, the purchaser accepted personal liability for making the first two $50,000 payments due on the promissory note, an additional obligation not required by the written contract.

■■■ A party seeking specific performance of a contract for the purchase and sale of real property need only prove that he is ready, willing and able to pay the agreed price for the property and perform the essence of the agreement and offer to do so. *Cowman v. Allen Monuments, Inc., supra,* at 227; *Burford v. Pounders,* 145 Tex. 460, 199 S.W.2d 141, 144 (1947). This the purchaser has done, and seller breached the written agreement. Seller had no right to repudiate the contract the day after closing even if there was no oral agreement changing the date of delivery of the deed. In that case, he could have rescinded the escrow agreement under which the deed was originally to be delivered only if purchaser failed to comply with the escrow. *Cf. Glover v. Donohoo,* 197 S.W.2d 531, 534 (Tex.Civ.App.—El Paso 1946, no writ). Having examined the record with care, we find that the evidence is legally and factually sufficient to support the jury's findings and points two, three, six, seven, eight, and ten are each overruled. *Garza v. Alviar, supra.*

■■■ We also overrule appellant's points of error 4, 11, 18, 19, and 20, which challenge the enforceability of the modified option contract and the admission of parol evidence of the oral modification. The parties' agreement to abandon their original escrow arrangement in return for letters of credit guaranteeing payment of purchaser's first two installment payments was outside the statute of frauds. *Upham v. Banister,* 44 S.W.2d 1014, 1015 (Tex.Civ. App.—Amarillo 1931, no writ); *Miller v. Deahl,* 239 S.W. 679 (Tex.Civ.App.—Amarillo 1922, writ ref'd). *See also Garcia v. Karam,* 154 Tex. 240, 276 S.W.2d 255, 257 (1955).

Since the parties themselves resolved any inconsistencies and ambiguities in the option contract by agreeing to consumate the transaction at the closing, we need not address appellant's points of error five and nine. *Harris v. Rowe,* 593 S.W.2d 303 (Tex.1979).

We turn now to Seller's points 12, 14, and 15, wherein he complains of the evidence and instructions pertaining to the jury finding on the issue of estoppel (Special Issue No. 9). The trial court included in its charge to the jury the following definition:

> You are instructed that the term "estoppel" is defined as when a representation or act by one party causes the other to do an act which would operate to his detriment if the first party is allowed to complain or where a party recognizes the validity of a transaction and accepts the benefits from the transaction and then attempts to repudiate it.

The court submitted as Special Issue No. 9 the following:

> Do you find from a preponderance of the evidence that by executing the closing documents and delivering the deed at closing to the Title Company, the seller is estopped from requiring that the deed be

delivered at closing to Medical Center Bank?

The jury answered, "We do."

Seller objected to the preceding definition and tendered an alternative definition on the ground that it is incorrect and fails to include a statement that the representation or act by one party which causes another party to act to its detriment must be a false representation or concealment of a material fact. He also complains on appeal, though not in the trial court, that the addition of the phrase "if the first party is allowed to complain" cannot be supported by authority. The jury's affirmative answer to Special Issue No. 9 clearly was affected, he argues, by the erroneous definition of the term "estoppel." We remain unpersuaded.

Purchaser agrees that the elements of equitable estoppel set out in *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929 (1952) include false representation or concealment of a material fact, but it insists the instruction was substantially correct, citing *Landrum v. Devenport*, 616 S.W.2d 359, 363 (Tex.Civ.App.—Texarkana 1981, no writ) (identical definition), or, if erroneous, it was harmless error.

If an act or admission is susceptible of two constructions, one of which is consistent with the right asserted by the party sought to be estopped, it forms no estoppel. *Gulbenkian, supra*, 252 S.W.2d at 932. Seller alleges that the title company, a neutral party at the closing, had a duty to follow the instruction regarding delivery of the deed to the bank found in the written earnest money contract and that there is no evidence seller instructed the title company to deliver the deed to buyer or to record the deed prior to the purchaser's payment of the first two installments. His act of handing the executed deed to the closer is consistent with his contention, claims seller, that the title company should deliver the deed to the bank. He further claims there is no evidence buyer suffered any prejudice merely by reason of the execution of the closing documents and the delivery of the deed at closing to the title company.

The facts in our record refute this argument against the finding of estoppel. What the title company's closer believed is not the issue. Rather, what did seller lead the buyer to believe and act upon? Testimony by witness Cassack concerning the seller's agreement to accept the letters of credit in return for early delivery of the deed, the letter from seller's attorney to buyer's attorney stating that title would pass at the closing, and seller's failure to speak out when the letters of credit were tendered at closing conflict with seller's trial testimony that he never accepted the letters of credit. The closer, Mark Muellerweiss, testified that, after all the documents were executed, he told the parties he intended to record them as soon as he received the proper releases from the bank. Seller made no objection. Estoppel may be based upon silence or inaction rather than an affirmative misrepresentation if by such silence or inaction on the part of one under a duty to speak, the opposing party is misled to his injury. *Storms v. Tuck*, 579 S.W.2d 447 (Tex.1979). Seller's deposition testimony shows that his attorney told him he thought the bank had approved the letters of credit. He admitted that he permitted the closing to go forward knowing buyer had brought the letters of credit to the closing. If seller did not intend to accept the letters of credit in exchange for immediate passage of title, then he had a duty to say so at the time.

The evidence supports a finding of estoppel even under the definition tendered by seller. In reliance upon representations by seller or his agents that the deed would be delivered at closing and the further concealment by seller of any reservations he had concerning that means of payment, purchaser made himself, by means of the letters of credit (secured at a cost to purchaser of $1,100), personally liable for payment by seller of his note to the bank. This was proof of conduct by seller calculated to mislead purchaser and was acted upon by purchaser in good faith to his detriment. Furthermore, in view of the

jury's finding that buyer exercised the contract in strict accordance with its terms and the parties orally agreed to delivery of the deed at closing (Special Issue Nos. 1 and 3), the jury's findings on waiver and estoppel are unnecessary to support the judgment. The error, if any, in submission of the instruction of estoppel, was harmless. T.R.C.P., Rule 434. This series of points is overruled.

We turn now to Seller's first point of error complaining of the legal inadequacy of the contract sued upon because of the lack of any legal description of the land involved. As noted earlier, while the option contract referred to an exhibit containing a legal description of the land, none was attached. The first point of error, set forth below, attacks this matter directly.[1]

■■■ The lack of a property description in the option contract did not render the option contract void. *Avinger v. Campbell*, 499 S.W.2d 698, 704 (Tex.Civ. App.—Dallas 1973, writ ref'd n.r.e., 505 S.W.2d 788). This result is reached because, under the Statute of Frauds, an oral contract to sell real estate is not void, but only voidable, in a suit to enforce specific performance. *Mason v. Abel*, 215 S.W.2d 377 (Tex.Civ.App.—Dallas 1948, writ ref'd n.r.e.). As applied to the facts at bar, the option contract was rendered enforceable by the seller executing the general warranty deed and the deposit of it in escrow with the closer for the title company. *See generally Simpson v. Green*, 231 S.W. 375 (Tex.Comm.App.1921, judgment adopted).

Nor are we impressed with seller's authorities submitted by way of a post-submission brief. *Wright v. Povlish*, 498 S.W.2d 686 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n.r.e.), one of the cases so cited, is readily distinguishable upon the facts, which have little, if any, similarity to the case under consideration.

We find no merit in appellant's first point of error, and it is overruled.

■■■ Our review of the record has not disclosed error, and we turn now to the next three points, complaining of the decree, which orders the deed to be delivered to purchaser when it has made the payments set out therein. The judgment recites that there is attached thereto four exhibits, "A", "B", "C", and "D", but the judgment found in our transcript does not have any exhibits attached. Seller argues that the Medical Center Bank lien, mentioned earlier, could not be satisfied at the time the judgment became final; hence, he contends, the judgment is not subject to being enforced. We disagree; the judgment was enforceable when rendered since it made allowance for seller's failure or inability to procure the necessary release of the lien by directing the clerk to remit to the lien holder, out of the monies deposited by the purchaser into the court's registry, all sums necessary to procure the release of the lien. Points 21, 22, and 23 are each overruled.

■■■ Purchaser's cross-point, noting the absence of the exhibits to the judgment, argues that we should reform the judgment, *nunc pro tunc;* but Exhibit "C," one of two deeds of trust securing Medical Center Bank's lien, was not admitted into evidence and is not in our record, although its existence was conclusively established. The judgment, as entered, contains a complete description of the missing Exhibit "C," in these words:

> That certain deed of trust dated October 18, 1977, executed by Morin M. Scott, Trustee, conveying to D.W. Neuenschwander, Trustee, of Harris County, Texas, an undivided twenty-two (22%) percent interest in the property, said Deed of Trust filed for record under Harris County Clerk's File No. F–386440
> . . . .

Because of this omission from the judgment, we are of the opinion that the correc-

1. *First Point of Error:* "The trial court erred by rendering a judgment ordering specific performance of the alleged contract to convey real estate dated February 6, 1979, when the land to be conveyed was not described in the written instrument or in another writing referred to therein which was in existence at the time of the execution of the purported contract."

tion should be made in the trial court by procuring a certified copy of said deed of trust and attaching it to the judgment upon remand, along with copies of Exhibits "A," "B," and "C." To that end, we reverse the judgment of the trial court and remand the cause for correction of the judgment by attaching the exhibits described above to the judgment of the court signed on December 13, 1982. *See Dikeman v. Snell,* 490 S.W.2d 183, 186 (Tex.1973).

█ There remains one further item requiring our action. The jury found that $12,500 would be a reasonable attorney's fee for perfecting the appeal to the Court of Appeals; and, if an application for a writ of error was made to the Supreme Court of Texas, an additional sum of $7,500 would be a reasonable fee. The judgment, as signed, does not specifically award any attorney's fees for appeals, as such, but does provide for "abatement" of the sums due from purchaser in the amounts of $12,500 and $7,500 if such contingencies were met. While we might speculate that such amounted to an allowance of attorney's fees in the sums found by the jury, the judgment does not so recite.

Consequently, we sustain seller's twenty-fourth point of error with reference to such attorney's fees, and now direct the trial court, upon remand, to clarify such award and specify in the reformed judgment that such "abatements" of the purchase price are for attorney's fees as found by the jury.

The judgment of the trial court is reversed and the cause is remanded with instructions to amend the judgment as set forth in the last three concluding paragraphs of this opinion.

Reversed and remanded with instructions.