**William Stephen CHAMBLESS, M.D., Plaintiff,**

v.

**TRAVELERS LLOYDS OF TEXAS INSURANCE CO., INC., Defendant.**

No. 3:00–CV–784–X.

United States District Court, N.D. Texas, Dallas Division.

Nov. 28, 2000.

Randall C Reed, Attorney at Law, Weiner Glass & Reed, Dallas, TX, for William Stephen Chambless, MD, plaintiff.

Russell Joseph Bowman, Attorney at Law, Paul R Smith, Attorney at Law, Scott Bowman & Stella, Dallas, TX, for Travelers Lloyds of Texas Insurance Company Inc, defendant.

Richard D Mays, Law Office of Richard Mays, Anna, TX, pro se.

### MEMORANDUM OPINION AND ORDER

KENDALL, District Judge.

Before the Court are: Defendant's Motion for Partial Summary Judgment, filed September 27, 2000; Plaintiff's Response to the Motion for Partial Summary Judgment, filed October 11, 2000; and Defendant's Reply in Support of the Motion for Partial Summary Judgment, filed October 25, 2000. At issue in this Motion for Partial Summary Judgment is whether, under Texas law, a fire that destroyed Plaintiff's dwelling caused Plaintiff to sustain a legal loss for which Defendant is liable. For the reasons stated below, the Court concludes that under Texas law and given the specific facts of this case, Plaintiff has not suffered a pecuniary loss for which Defendant must indemnify Plaintiff. Defendant's Motion for Partial Summary Judgment is **GRANTED.**

### I. BACKGROUND

Plaintiff brought this action for breach of contract and non-compliance with the Texas Insurance Code against his insurance company, Travelers, to recover for the complete destruction of his home by a fire. The facts involved in this Motion for Partial Summary Judgment are not in dispute. Dr. William S. Chambless, a retired opthamologist, owned a home on 13.438 gross acres of land in Plano, Texas. *See* Commercial Contract of Sale [hereinafter Contract of Sale], ¶ 2, in Pl.'s App. at 3. Early in 1999, Plaintiff was approached by a zoning consultant, Art Martin, who asked Plaintiff whether he would be interested in selling his land to a party who wanted to buy it for commercial purposes. *See* Chambless Depo., in Def.'s App. at 82–83, 89. Plaintiff expressed interest in selling his property and, after discussing matters with Mr. Martin, decided that he would be willing to part with his home and land for a flat figure of $700,000. *Id.* at 85. This figure proved acceptable to the prospective buyer, Jeda Corp., and in late March of 1999 the parties signed a document titled "Contract of Sale," in which the parties agreed that Dr. Chambless would "sell and convey" and Jeda Corp. would "buy and pay for" the Plano property for $700,000 in cash at closing. *See* Contract of Sale, ¶¶ 1, 3, in Pl.'s App. at 3. The parties made the Contract of Sale contingent on Jeda obtaining the Plano City Council's approval for rezoning, and because of this contingency the Contract did not specify an exact closing date. *See id.,* ¶ 17, at 9; ¶ 12(A), in Pl.'s App. at 6. The contract also specified that Jeda had the right to specific performance of the contract against Dr. Chambless, but in the event of Jeda's default, Dr. Chambless was entitled only to retain Jeda's $15,000 of earnest money as liquidated damages. *See id.,* ¶ 13, in Pl.'s App. at 7.

At the end of June, 1999 the City of Plano rezoned Plaintiff's land. *See* Chambless Depo, in Def.'s App. at 87. While the Contract remained an option to buy, the rezoning eliminated the contingent aspect of the Contract, and Plaintiff became assured of keeping at least the $15,000 of earnest money if Jeda did not exercise its option. After the rezoning, Plaintiff and Jeda agreed to close on August 2, 2000 and, as provided in the Contract of Sale, Plaintiff would have sixty days thereafter to vacate the premises. *See id.* at 88. Neither Dr. Chambless's deposition nor other materials submitted by the parties establish exactly when the parties agreed to the August 2, 1999 closing date.

On July 20, 1999, a fire broke out at Plaintiff's residence and his home sustained serious damage from the fire. *See* Pl.'s Am. Complaint, at ¶ 5; Def.'s Mot. for Partial Summ.J., at 2. At the time of the fire, Plaintiff had in effect a Texas Homeowners Policy to insure his home against fire damage and assorted other disasters. *See* Texas Homeowners Policy [hereinafter Homeowners Policy], "Section I Perils Insured Against," in Pl.'s App. at 23; "Declarations Page," in Pl.'s App. at 15 (showing that the Policy was in effect from September 3, 1998 through September 3, 1999). The Policy included "Coverage A," covering damage to the dwelling, and "Coverage B," covering damage to personal property; only damage to the dwelling is at issue in this Motion for Partial Summary Judgment. *See* Homeowners Policy, in Pl.'s App. at 21. Although Travelers Lloyds of Texas is the named Defendant in this case, Plaintiff's Amended Complaint identifies Travelers Indemnity Co. of Connecticut as the issuer of Plaintiff's policy, and the policy confirms that Travelers Indemnity Co. of Connecticut issued the policy in question. *See* Pl.'s Am. Complaint, at ¶ 2; Homeowners Policy, in Pl.'s App. at 15.

After the fire, two events relevant to this Motion for Partial Summary Judgment occurred. First, Jeda Corp. exercised its option to purchase Plaintiff's land for the agreed option price, on August 2, 1999. Dr. Chambless acknowledged in his deposition that the terms of sale remained the same after the fire:

Q: After the fire, the property still sold at the agreed contract price?

A: Yes.

Q: The fire didn't affect that price in any way?

A: No.

*See* Chambless Depo., in Def.'s App. at 139.[1] Second, Travelers refused to pay Dr. Chambless for the damage to his home. With respect to the "Coverage A" dwelling portion of the insurance policy at issue in this Motion for Partial Summary Judgment, Travelers contends that because Jeda Corp. purchased Plaintiff's home and land for the same price agreed to before the fire, Plaintiff has suffered no legal loss for which coverage is provided under the Homeowners Policy. Given Jeda's decision to exercise its option according to the pre-fire agreement, the parties dispute whether under Texas law Plaintiff suffered a loss for which Defendant was required to indemnify Plaintiff.

## II. ANALYSIS

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Furthermore, "[s]ummary judgment is appropriate when there is no genuine issue of material fact and only a question of law is presented." *McDaniel v. Anheuser–Busch, Inc.,* 987

---

**1.** While the parties have not included any statement from Jeda Corp. as to why Jeda decided to purchase the land at the same price after the fire, Dr. Chambless was under the impression that Jeda was planning to use the land to build a commercial facility, and never planned to use his home. *See* Chambless Depo., in Def.'s App. at 89.

F.2d 298, 301 (5th Cir.1993). The parties have not identified any facts that are in dispute in this Motion for Partial Summary Judgment. Defendant seeks a judgment only on the question of whether, under Texas law, Plaintiff has suffered a legal loss for which the Homeowners Policy provides coverage.

Because this case is based on diversity jurisdiction, the Court applies the substantive law of the State of Texas. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). A federal court applying the law of the forum must, "apply the law as interpreted by the state's highest court." *Ladue v. Chevron U.S.A., Inc.,* 920 F.2d 272, 274 (5th Cir.1991). To the extent that there is not a Texas Supreme Court opinion directly on point, "a decision by an intermediate appellate state court 'is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.' " *Texas Dept. of Housing and Cmty. Affairs v. Verex Assurance, Inc.,* 68 F.3d 922, 928 (5th Cir. 1995) (quoting *West v. American Tel. & Tel. Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940)).

In the present case, the Court has the benefit of a Texas Supreme Court opinion that establishes a framework for determining whether Plaintiff has suffered a legal loss for which Defendant must indemnify him. *Paramount Fire Ins. Co. v. Aetna Casualty & Surety Co.* largely directs the Court's analysis. 163 Tex. 250, 353 S.W.2d 841 (1962). In *Paramount,* the sellers and prospective buyers of a house entered a contract for sale in which both parties had the right to specific performance. *Id.* at 842. Before the closing date, both parties obtained fire insurance to cover their respective interests in the property; the sellers purchased a policy from Paramount payable to sellers, and the buyer bought a policy from Aetna payable to the mortgagee financing the home purchase. *See id.* at 842–43. The home was destroyed in a

fire the day before closing, but the buyer proceeded to pay sellers the contract price and received the deed. *Id.* at 843. The sellers, having received the sales price, assigned their rights under the Paramount policy to the purchaser. *Id.* Both Aetna and Paramount settled with their insureds, and then sued each other to allocate the loss. *Id.*

In holding that Paramount had no liability under its policy with the sellers, the Court clarified Texas' law of indemnity. First, the Court recited the "generally accepted principle" that:

> Since a contract for insurance against fire ordinarily is a contract of indemnity . . . insured is entitled to receive the sum necessary to indemnify him, or to be put, as far as practicable, in the same condition pecuniarily in which he would have been had there been no fire; that is, he may recover to the extent of his loss occasioned by the fire, but no more, and he cannot recover if he sustained no loss.

*Id.* at 844 (quoting 45 C.J.S. Ins. § 915, p. 1010). The Court then acknowledged that, viewed literally and from the fixed point in time that the fire occurred, the seller whose property was destroyed by fire before closing could be said to have suffered a loss. *See id.* However, the Texas Supreme Court rejected the reasoning that would automatically allow a seller this type of "windfall." *Id.* Instead the Court was more persuaded by a line of cases in which courts analyze the reality of a loss; the Court quoted the Supreme Court of Wisconsin for the rule that a court should " 'look[ ] to the substance of the whole transaction rather than to seek a metaphysical hypothesis upon which to justify a loss that is no loss.' " *Id.* (quoting *Ramsdell v. Insurance Co. of North America,* 197 Wis. 136, 221 N.W. 654 (1928)).

This Court agrees with Plaintiff that the present facts are not identical to the facts in *Paramount,* because *Paramount* involved a mutually enforceable

contract for sale, *id.* at 842, while the sale document in the present case is actually an option contract. As noted above, the contract between Dr. Chambless and his buyer provided that if Jeda Corp. defaulted, Dr. Chambless's only recourse would be to keep Jeda's $15,000 of earnest money. Under Texas law, a contract of sale providing only this limited remedy to one of the parties is an option contract. *See, e.g., Scott v. Vandor,* 671 S.W.2d 79, 84 (Tex. App.—Houston [1st] 1984, writ ref'd n.r.e.).

■ However, the Court disagrees with Plaintiff's assessment that the *Paramount* Court meant to confine its discussion of indemnity to those cases in which both parties had a right to specific performance at the time of the fire. The Court stated, "[w]e believe ... that if a vendor is entitled to specific performance under a contract of sale and thereby collects the full purchase price despite fire damage to improvements, he has suffered no legal loss." *Id.* at 845. Although the Court tailored its holding to *Paramount's* facts, the Court's reasoning does not exclude all non-mutually enforceable agreements from being part of a "whole transaction" that can effectively erase a pecuniary loss. It seems to have been more important to the *Paramount* Court simply that there was, at the time of the fire, a contract in force that could bind at least one of the parties to an identifiable purchase price, and that the sale did in fact go forward after the fire. Such an interpretation is consistent with *Paramount's* endorsement of the line of cases limiting recovery under insurance contracts when "insureds ultimately suffer[ ] no pecuniary loss." *See id.* at 255, 353 S.W.2d 841. Moreover, the opinion's focus on the transaction as a whole shows that a case by case analysis of the existence of a loss is in order. *See id.*

In the present case, a "related transaction" ultimately erased the pecuniary loss caused by the fire. At the time of the fire, Jeda had bought and paid for the right to force Plaintiff to sell his home and land for a total of $700,000. Whether or not the fire had occurred, in the face of Jeda's pending option Plaintiff had neither the right to abandon Jeda in favor of a more lucrative offer nor the right to extract a higher price from his buyer. By Plaintiff's own admission, Jeda elected to proceed with the transaction after the fire under the option contract's precise terms. As the Court in *Paramount* stated, " '[t]his is not a case where a stranger to the transaction, out of charity, or for other reasons, might make good the loss.... The loss has been made good out of a related transaction,' " which in the present case was the exercise of the option. *Id.* at 844 (quoting *Ramsdell,* 221 N.W. at 654). Nothing in the Homeowners Policy contracts around the *Paramount* Court's approach to indemnity. The best contractual language Plaintiff points to in his Response Brief simply *caps* liability at the amount of the insured's interest when the loss occurred. *See* Br. in Support of Pl.'s Resp. to Mot. for Partial Summ.J., at 4–5 (quoting Homeowners Policy, in Pl.'s App. at 26). Because the option contract contained a set purchase price before the fire, the Court is able to determine with certainty that Plaintiff did not suffer any legal loss to the value of his property.

Plaintiff points to a Texas Court of Appeals case, *Leggio v. Millers National Ins. Co.,* for the proposition that under Texas law, an option contract cannot be a "related transaction" as the *Paramount* Court used that phrase. 398 S.W.2d 607 (Tex. Civ.App.—Tyler 1965, writ ref'd n.r.e.). This Court finds *Leggio* to be distinguishable in important respects. In *Leggio,* a commercial landlord claimed insurance proceeds after a fire destroyed one of his buildings. *Leggio,* 398 S.W.2d at 608. The insurance company refused to pay because there was evidence that, pursuant to an option in the lease, the tenant had been planning to tear down the building anyway and build a new structure, and the tenant did in fact build a new structure after the fire. *Id.* The Court of Appeals applied

*Paramount* to the *Leggio* facts, and held that the insurance company was obligated to pay its insured. *Id.* at 609–10. The Court of Appeals' holding appears to have centered on three basic findings: (1) the landlord had an insurable interest at the time of the fire; (2) the insurance company did not show the absence of a pecuniary loss; and (3) even if there had been no pecuniary loss, the absence of loss would not be due to a "related transaction." *See id.*

The Court disagrees with Plaintiff's interpretation of *Leggio* as absolutely establishing under Texas law that an option contract can never constitute a "related transaction" within the meaning of the *Paramount* test. Plaintiff points to language in *Leggio* that, "[i]f ... the option was not exercised and accepted before the fire, appellant would have continued to have an insurable interest because of his pecuniary interest in the building and the lease contract and there would be no related transaction." *Id.* at 609. However, Plaintiff completely ignores the Court of Appeals' additional explanation that "[t]he acceptance of an option, to be effectual, must be unequivocal, absolute, unconditional ... and according to the terms or conditions of the option. Substantial compliance with the terms of the option is held not sufficient to constitute an acceptance...." *Id.* at 610 (quoting *Vratis v. Baxter*, 315 S.W.2d 331, 337 (Tex.Civ. App.—Beaumont 1958)). The Court of Appeals also dedicated several paragraphs to describing why the tenant's post-fire rebuilding project did not conform with the terms of the rebuilding option contained in the lease. *Id.* at 611. These parts of the opinion, which Plaintiff does not discuss, point strongly toward a conclusion that the *Leggio* court simply did not believe that the tenant's subsequent building project sufficiently complied with the terms of the option contract to be "related," and not that the exercise of an option can *never* serve as a "related transaction." In the present dispute, Plaintiff concedes that the buyer exercised its option precisely in ac-

cordance with the pre-fire terms of that agreement, and thus the problem of relatedness at issue in *Leggio* is not present.

At least one Texas Court of Appeals case demonstrates that *Paramount's* "related transaction" test is more expansive than Plaintiff contends. In *Hochheim Prairie Farm Mut. Ins. Ass'n v. Campion*, a Court of Appeals held that an insurance company found liable to its insured should have been allowed to introduce evidence at trial that a builder had, consistent with a warranty, repaired hail damage to the roofs of two poultry houses. 581 S.W.2d 254, 255 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). The Court found that the repairs made pursuant to the pre-hail warranty agreement were a "related transaction," and Defendant should have been allowed to introduce evidence of this "legal defense" at trial. *Id.* at 257. This defense was available to the insurance company despite the fact that apparently no one contested the fact that Plaintiff had an insurable interest at the time the hail damage occurred. *See id.* at 255–56. In the present case, Plaintiff's loss to an insurable interest was not merely "diminished" by post-disaster events as was the case in *Hochheim*, but was completely eliminated by the consummation of a pre-disaster transaction.

The Court's holding today that Plaintiff is not entitled to a windfall from its insurance company after completing the sale pursuant to a pre-fire option agreement does not encompass the issue of whether Defendant is liable under the "Loss of Use" provision of the policy, which may provide coverage for living expenses incurred in the wake of the fire. *See* Texas Homeowners Policy, "Extensions of Coverage" ¶ 2(a), in Pl.'s App. at 22. Defendant's Motion for Partial Summary Judgment seeks a judgment that Travelers has no liability to Plaintiff for the damage to Plaintiff's dwelling. *See* Def.'s Mot. for Summ.J., at 2. Although Plaintiff's response notes that Dr. Chambless incurred

expenses for lodging after the fire, *see* Pl.'s Resp. to Def.'s Mot. for Summ.J., at 2, the Court does not read Defendant's Motion as placing liability for "Loss of Use" expenses in issue.

### III.  CONCLUSION

For the reasons stated above, Defendant's Motion for Partial Summary Judgment is **GRANTED.**

**SO ORDERED.**